GEORGE A. FLEMING III, EXECUTOR (ESTATE OF
EILEEN S. FLEMING) *v.* STEPHEN M.
GARNETT ET AL.
(14700)

PETERS, C. J., and BORDEN, NORCOTT, KATZ and PALMER, Js.

Argued March 24—decision released August 23, 1994

*John T. Scully* for the appellant-appellee (defendant International Transport, Inc.).

*Andrew W. Krevolin,* with whom was *Ann M. Siczewicz,* for the appellee-appellant (plaintiff).

PALMER, J. The principal issue in this appeal concerns the proper application of No. 86-338 of the 1986 Public Acts,[1] commonly referred to as "Tort Reform I,"

---

[1] The parties agree that this case is governed by the provisions of Public Act 86-338, effective October 1, 1986. Public Act 86-338, which was codified at General Statutes (Rev. to 1987) §§ 52-225a to 52-225d, 52-251c and 52-572h, was revised, effective October 1, 1987, by No. 87-227 of the 1987 Public Acts, commonly referred to as "Tort Reform II." The following provisions of P.A. 86-338 are relevant to this appeal.

General Statutes (Rev. to 1987) § 52-225a provides: "REDUCTION IN DAMAGES IN PERSONAL INJURY AND WRONGFUL DEATH ACTIONS FOR COLLATERAL SOURCE PAYMENTS. In any civil action, accruing on or after October 1, 1986, whether in tort or in contract, wherein the claimant seeks compensation for personal injury or wrongful death and wherein liability is admitted or is determined by the trier of fact and damages are awarded to compensate the claimant, the court shall reduce the amount of such award by the total of all amounts paid to the claimant from all collateral sources

to reduce a plaintiff's verdict on the basis of collateral source payments. The plaintiff, George A. Flem-

which are available to him, except that there shall be no reduction for (1) collateral sources for which a right of subrogation exists and (2) the amount of collateral sources equal to the reduction in the claimant's recoverable damages attributable to his percentage of negligence pursuant to section 52-572h. Upon a finding of liability and an awarding of damages by the trier of fact, the court shall receive evidence from the claimant and other appropriate persons concerning the total amount of collateral sources which have been paid for the benefit of the claimant. The court shall also take testimony of any amount which has been paid, contributed, or forfeited by, or on behalf of, the claimant or members of his immediate family to secure his right to any collateral source benefit which he is receiving as a result of such injury or death, and shall offset any reduction in the award by any such amount."

General Statutes (Rev. to 1987) § 52-225b provides: " 'COLLATERAL SOURCES' DEFINED. For purposes of sections 52-225a to 52-225c, inclusive: 'Collateral sources' means any payments made to the claimant, or on his behalf, (1) by any person as compensation for personal injury or wrongful death attributable to the incident giving rise to the cause of action or (2) by or pursuant to: (A) Any health or sickness insurance, automobile accident insurance that provides health benefits, and any other similar insurance benefits, except life insurance benefits available to the claimant, whether purchased by him or provided by others; or (B) any contract or agreement of any group, organization, partnership or corporation to provide, pay for or reimburse the costs of hospital, medical, dental or other health care services."

General Statutes (Rev. to 1987) § 52-572h provides in relevant part: "NEGLIGENCE ACTIONS. DOCTRINES APPLICABLE. LIABILITY OF MULTIPLE TORTFEASORS FOR DAMAGES. (a) For the purposes of this section: (1) 'Total economic damages' means the total amount of economic damages that would have been recoverable by the claimant but for his negligence; (2) 'total noneconomic damages' means the total amount of noneconomic damages that would have been recoverable by the claimant but for his negligence; (3) 'recoverable economic damages' means the total economic damages reduced by the amount attributable to the claimant's percentage of negligence; (4) 'recoverable noneconomic damages' means the total noneconomic damages reduced by the amount attributable to the claimant's percentage of negligence.

"(b) In causes of action based on negligence, contributory negligence shall not bar recovery in an action by any person or his legal representative to recover damages resulting from injury to persons or damage to property if the negligence was not greater than the combined negligence of the person or persons against whom recovery is sought. Any economic or noneconomic damages allowed shall be diminished in the proportion of the

ing III, brought this wrongful death action on behalf of the estate of his decedent, Eileen S. Fleming, against REM Transport, Ltd., Stephen M. Garnett and International Transport, Inc. The plaintiff's claims against Garnett and REM Transport, Ltd., were settled and withdrawn before trial. Thereafter, the case was tried to a jury, which returned a verdict in favor of the plaintiff against the remaining defendant, International Transport, Inc. (defendant). After a posttrial hearing, the court reduced the jury award pursuant to General Statutes § 52-225a, to reflect collateral source benefits received by the plaintiff, and rendered judgment for the plaintiff. The court denied the defendant's motion to set aside the verdict. The defendant appealed and the plaintiff cross appealed from the judgment of the trial court to the Appellate Court, and we transferred the case to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We affirm the judgment of the trial court.

---

percentage of negligence attributable to the person recovering which percentage shall be determined pursuant to subsection (f) of this section. . . .

"(d) The proportionate share of damages for which each person is liable is calculated by multiplying the recoverable economic damages and the recoverable noneconomic damages by a fraction in which the numerator is the person's percentage of negligence, which percentage shall be determined pursuant to subsection (f) of this section, and the denominator is the total of the percentages of negligence, which percentages shall be determined pursuant to subsection (f) of this section, to be attributable to all persons whose negligent actions were a proximate cause of the damages. Any percentage of negligence attributable to the claimant shall not be included in the denominator of the fraction. . . .

"(f) The jury . . . shall specify: (1) The total amount of economic damages that would have been recoverable by the claimant but for his negligence; (2) the total amount of noneconomic damages that would have been recoverable by the claimant but for his negligence; (3) the percentage of negligence that proximately caused the injury, in relation to one hundred per cent, that is attributable to each person whose negligent actions were a proximate cause of the damages; and (4) the percentage of negligence attributable to the claimant."

All references in this opinion to the General Statutes, except where otherwise noted, are to the 1987 codification of P.A. 86-338.

The following facts are not in dispute. On August 10, 1987, the plaintiff's decedent was fatally injured when the car she was driving collided with a truck on Route 5 in South Windsor. The truck was operated by Garnett, an employee of REM Transport, Ltd., and carried a trailer owned by the defendant. The defendant, a carrier specializing in the transportation of oversized loads, maintained a facility for the pickup and return of trailers in South Windsor, adjacent to a facility operated by Mahr Freight Lines (Mahr Freight). Both Mahr Freight and the defendant had driveways permitting access to the southbound lanes of Route 5. The defendant's driveway, unlike that of Mahr Freight, was wide enough to allow trucks carrying oversized trailers to exit onto Route 5 without blocking both lanes of southbound traffic. The accident occurred as Garnett was exiting onto the southbound lanes of Route 5 from a driveway owned by Mahr Freight, shortly after he had picked up a trailer from the defendant's terminal. Garnett did not exit via the defendant's driveway because the driveway was blocked by another trailer. Instead, Garnett drove his trailer across a dirt path to the Mahr Freight driveway. When Garnett made a right hand turn onto Route 5, his trailer blocked both southbound lanes, leaving no room for cars to pass. The decedent, who was traveling southbound on Route 5, collided with Garnett's truck and was killed.

The plaintiff brought this wrongful death action on behalf of the decedent's estate against Garnett, REM Transport, Ltd., and the defendant. Before trial, the plaintiff settled his claims against Garnett and REM Transport, Ltd., for $825,000. The plaintiff's action against the defendant proceeded to trial, and a jury found that the amount of damages totaled $1,500,000. In allocating the comparative negligence of the parties, the jury found the defendant to be 35 percent respon-

sible for the accident, and the plaintiff to be 25 percent contributorily negligent.[2]

After a postverdict hearing pursuant to General Statutes § 52-225a, the trial court determined that the amount of the pretrial settlements, $825,000, must be deducted as a collateral source from the total amount of damages incurred, $1,500,000. Accordingly, the court rendered judgment in favor of the plaintiff in the amount of $315,000.[3] The court denied the defendant's motion to set aside the verdict, and this appeal followed.

On its appeal, the defendant claims that the trial court improperly: (1) denied its motion to set aside the verdict; and (2) calculated the defendant's proportionate share of the damages. On his cross appeal, the plaintiff claims that: (1) the collateral source reduction provision of § 52-225a is unconstitutionally vague; and (2) the trial court improperly failed to offset the collateral source reduction by certain of the plaintiff's attorney's fees. We conclude that these claims are without merit.

---

[2] The jury further allocated 30 percent of the responsibility for the accident to Garnett and REM Transport, Ltd., collectively, and 10 percent to Mahr Freight.

[3] In applying General Statutes § 52-225a, the trial court calculated the defendant's proportionate share of liability in the following manner:

| | |
|---|---|
| TOTAL DAMAGES | $1,500,000 |
| REDUCTIONS | |
| Plaintiff's Contributory Negligence | |
| (25 percent of $1,500,000). | |
| General Statutes § 52-572h (b). | – $375,000 |
| Net Collateral Source Reduction | |
| Garnett/REM Transport, Ltd. settlement ($825,000), less amount equal to reduction in damages attributable to the plaintiff's percentage of negligence ($375,000). | |
| General Statutes § 52-225a. | – $450,000 |
| NET RECOVERABLE DAMAGES | $675,000 |
| DEFENDANT'S PROPORTIONATE SHARE | |
| ($675,000 multiplied by 35 percent/75percent). | |
| General Statutes § 52-572h (d). | $315,000 |

# I

The defendant asserts that the trial court improperly denied its motion to set aside the verdict because a reasonable jury could not have concluded either that the defendant: (1) had a duty to warn the driver exiting its terminal of the danger of using the Mahr Freight driveway; or (2) that its actions were the proximate cause of the injuries. We disagree.

"Directed verdicts are not favored. *Puro* v. *Henry,* 188 Conn. 301, 303, 449 A.2d 176 (1982)." *Petyan* v. *Ellis,* 200 Conn. 243, 244, 510 A.2d 1337 (1986). Consequently, "[o]ur review of a trial court's refusal to direct a verdict or to render a judgment notwithstanding the verdict takes place within carefully defined parameters. We must consider the evidence, including reasonable inferences which may be drawn therefrom, in the light most favorable to the parties who were successful at trial . . . giving particular weight to the concurrence of the judgments of the judge and the jury, who saw the witnesses and heard the testimony . . . . The verdict will be set aside and judgment directed only if we find that the jury could not reasonably and legally have reached their conclusion. . . ." (Citations omitted; internal quotation marks omitted.) *John T. Brady & Co.* v. *Stamford,* 220 Conn. 432, 440–41, 599 A.2d 370 (1991); *Iseli Co.* v. *Connecticut Light & Power Co.,* 211 Conn. 133, 140, 558 A.2d 966 (1989).

With respect to the defendant's claim that it had no duty to warn Garnett of the danger of utilizing the Mahr Freight driveway, the defendant does not dispute that the trial court properly instructed the jury on the law concerning its duty to warn. In substance, the trial court charged that a possessor of land has a duty to conduct its business operations in a manner that does not create an unreasonable risk of physical harm to

those outside of the premises; 2 Restatement (Second), Torts § 371 (1965); W. Prosser & W. Keeton, Torts (5th Ed. 1984) § 57; and that this duty may include the duty to warn invitees[4] of conditions that pose reasonably foreseeable dangers to the public. 2 Restatement, supra, §§ 290, 302, 343; W. Prosser & W. Keeton, supra, § 33, pp. 197–99. The duty to warn, however, does not arise if an invitee already has actual knowledge of the dangerous condition. *Kaminski* v. *Fairfield,* 216 Conn. 29, 38, 578 A.2d 1048 (1990); *Warren* v. *Stancliff,* 157 Conn. 216, 220, 251 A.2d 74 (1968); see also 2 Restatement, supra, § 343A. We note, further, that when "there [is] room for reasonable disagreement as to whether the plaintiff was or should have been aware of the [dangerous] condition . . . the jury and not the trial judge should [determine] whether the defendant had a duty to warn the plaintiff of the . . . condition . . . ." (Citations omitted.) *Warren* v. *Stancliff,* supra, 220–21.

The defendant argues, however, that the jury could not reasonably have concluded that the defendant had a duty to warn Garnett of the danger posed by his use of the Mahr Freight driveway because the evidence indisputably reflected Garnett's awareness of the unsafe risk. Contrary to the defendant's assertion, Garnett testified that he had been unaware of the extent to which he would be required to block both lanes of traffic until he already had begun to turn onto Route 5, and that it would have been unsafe for him to have backed up at that point. Garnett also testified that he had never before operated a truck in the defendant's terminal and that he had believed that the Mahr Freight driveway was part of that terminal.

The jury was entitled to credit Garnett's testimony. *Berry* v. *Loiseau,* 223 Conn. 786, 821, 614 A.2d 414

---

[4] The defendant does not dispute the fact that Garnett was an invitee.

(1992); *State* v. *Henning,* 220 Conn. 417, 420, 599 A.2d 1065 (1991). Accordingly, we conclude that the evidence was sufficient to permit a jury reasonably to conclude that Garnett was unaware of the full extent of the danger that his use of the Mahr Freight driveway would pose to traffic on Route 5. It was proper, therefore, for the trial court to have left the resolution of this disputed issue to the jury. See *John T. Brady & Co.* v. *Stamford,* supra, 220 Conn. 441.

The defendant also asserts that the evidence was insufficient to permit a jury to conclude that the defendant's failure to prevent the use of the Mahr Freight driveway was a proximate cause of the injuries.[5] Specifically, the defendant claims that the Mahr Freight driveway was safe for the use of trucks and, therefore, that it was not a substantial cause of the accident. We disagree.

In order to prevail in a negligence action, the plaintiff must demonstrate that the defendant's actions were the proximate cause of the plaintiff's injuries. *Doe* v. *Manheimer,* 212 Conn. 748, 757–59, 563 A.2d 699 (1989); *Wu* v. *Fairfield,* 204 Conn. 435, 438, 528 A.2d 364 (1987).[6] The fact that Garnett's negligent actions may have also been a proximate cause of the accident does not relieve the defendant of its responsibility; 2 Restatement, supra, § 302A; as "[m]ore than one proximate cause may result in any harm suffered." *Coburn*

---

[5] The defendant also claims that the jury could not reasonably have concluded that the defendant's failure to warn Garnett was a proximate cause of the accident because Garnett, as a commercial truck driver, must have known of the danger inherent in exiting the terminal in such a manner as to block both southbound lanes. Because we have concluded that a jury could reasonably have credited Garnett's testimony that he was not fully aware of the extent to which his exit from the Mahr Freight driveway would cause him to block both of those lanes, the defendant's claim must fail.

[6] Legal causation consists of two components, cause in fact and proximate cause. *Doe* v. *Manheimer,* supra, 212 Conn. 757–59. Only proximate cause is challenged in this case.

v. *Lenox Homes, Inc.,* 186 Conn. 370, 383, 441 A.2d 620 (1982). When there is an intervening force between the defendant's action and the plaintiff's injuries, the test for determining proximate cause is whether the defendant's negligence was a substantial factor in causing the plaintiff's injuries and "whether the harm which occurred was of the same general nature as the foreseeable risk created by the defendant's negligence. . . ." (Citations omitted; internal quotation marks omitted.) *Doe* v. *Manheimer,* supra, 758; 2 Restatement, supra, § 442B.[7]

The evidence indicated that Garnett, like other commercial drivers hired by the defendant to transport oversized loads on its trailers, was not completely familiar with the defendant's facilities. Moreover, the defendant conceded that drivers could freely exit its terminal through the Mahr Freight driveway, that they had done so regularly, and that the defendant had taken no action to prevent this practice. Finally, the plaintiff's expert testified that the use of the Mahr Freight driveway by oversized trailers was unsafe because a trailer exiting from that driveway would necessarily have had to block both lanes of Route 5.[8] Because the jury was entitled to credit this testimony, it reasonably could have concluded that the the defendant, a carrier specializing in the transport of oversized loads, should

---

[7] Section 442B of the Restatement (Second) of Torts provides: "Where the negligent conduct of the actor creates or increases the risk of a particular harm and is a substantial factor in causing that harm, the fact that the harm is brought about through the intervention of another force does not relieve the actor of liability, except where the harm . . . is not within the scope of the risk created by the actor's conduct."

[8] In support of its claim, the defendant relies on the testimony of its own expert, who suggested that the use of the Mahr Freight driveway by oversized trailers exiting from the defendant's terminal was not unsafe, and that the driveway had been used safely by trucks for more than thirty years prior to the accident. As the finder of fact, the jury was free to have rejected this testimony and credited that of the plaintiff's expert.

have been aware that an oversized trailer could not safely exit onto Route 5 using the Mahr Freight driveway and that its failure to have warned or otherwise prevented the use of the driveway was a substantial cause of the injuries. The trial court, therefore, properly denied the defendant's motion to set aside the verdict.

## II

Both parties challenge the trial court's application and interpretation of § 52-225a to calculate the defendant's proportionate share of the damages in this case. The plaintiff challenges the constitutionality of the collateral source reduction provisions of § 52-225a, under the state and federal constitutions, on vagueness grounds. The plaintiff also claims, in the alternative, that the trial court improperly refused to offset the collateral source reduction by the amount of the attorney's fees that he had expended in obtaining the settlement of his claims against Garnett and REM Transport, Ltd. The defendant contends that the trial court improperly applied the collateral source reduction to the total amount of damages found by the jury, rather than to the defendant's proportionate share. We conclude that § 52-225a is not unconstitutionally vague, and that the trial court properly calculated the defendant's proportionate share of the damages.

## A

The plaintiff first claims that the collateral source reduction provision of Tort Reform I is unconstitutionally vague, in violation of the due process clauses of the fourteenth amendment to the United States constitution and article first, § 8, of the Connecticut constitution.[9] We are not persuaded.

---

[9] The defendant claims that our review of the plaintiff's cross appeal is limited by the plain error rule because the plaintiff failed to file a motion to set aside the verdict pursuant to Practice Book § 320 and General Stat-

Our analysis of the constitutionality of § 52-225a begins with the premise that "a validly enacted statute carries with it a strong presumption of constitutionality, [and that] those who challenge its constitutionality must sustain the heavy burden of proving its unconstitutionality beyond a reasonable doubt. *State* v. *Breton,* 212 Conn. 258, 269, 562 A.2d 1060 (1989); *University of Connecticut Chapter, AAUP* v. *Governor,* 200 Conn. 386, 391, 512 A.2d 152 (1986); *Eielson* v. *Parker,* 179 Conn. 552, 560, 427 A.2d 814 (1980); *State* v. *Darden,* 171 Conn. 677, 678, 372 A.2d 99 (1976). In construing a statute, moreover, we will search for an effective and constitutional construction that reasonably accords with the legislature's underlying intent. *State* v. *Floyd,* 217 Conn. 73, 79, 584 A.2d 1157 (1991); *McConnell* v. *Beverly Enterprises-Connecticut, Inc.,* 209 Conn. 692, 705–706, 553 A.2d 596 (1989)." *Bartholomew* v. *Schweizer,* 217 Conn. 671, 675–76, 587 A.2d 1014 (1991). Furthermore, although due process requires that a statute "state its standard with adequate clarity and mark sufficiently distinct boundaries for the law to be fairly administered. . . . Lack of precision . . . is not, in and of itself, offensive to the requirement of due process. *Roth* v. *United States,* 354 U.S. 476, [491–92,] 77 S. Ct. 1304, 1 L. Ed. 2d 1498 (1957)." (Internal quotation marks omitted.) *Seals* v. *Hickey,* 186 Conn. 337, 344, 441 A.2d 604 (1982). The fact that the language of a statute is fairly debatable, therefore, will

---

utes § 52-228b. See *Saporoso* v. *Aetna Life & Casualty Co.,* 221 Conn. 356, 361–63, 603 A.2d 1160 (1992); *Falby* v. *Zarembski,* 221 Conn. 14, 22, 602 A.2d 1 (1992); *Dunham* v. *Dunham,* 204 Conn. 303, 311, 528 A.2d 1123 (1987). The plaintiff, however, has not challenged the propriety of the jury verdict, but rather a postverdict judgment rendered by the trial court, which fully considered the issues raised in this cross appeal after a hearing, arguments and the submission of briefs. In these circumstances, a motion to set aside the verdict would have been superfluous. See *Falby* v. *Zarembski,* supra, 22–23; cf. *Dunham* v. *Dunham,* supra, 311. Accordingly, our consideration of the plaintiff's cross appeal is not limited by the plain error standard of review.

not render the statute unconstitutionally vague. *Bottone* v. *Westport,* 209 Conn. 652, 658, 553 A.2d 576 (1989); *Seals* v. *Hickey,* supra, 344.

The plaintiff challenges, on vagueness grounds,[10] the following language of § 52-225a: "there shall be no [collateral source] reduction for . . . the amount of collateral sources equal to *the reduction* in the claimant's *recoverable damages* attributable to his percentage of negligence pursuant to section 52-572h." (Emphasis added.) The plaintiff claims that this language cannot reasonably be reconciled with the definitional provisions of § 52-572h. Specifically, he contends that the term "recoverable damages," although not expressly defined in either § 52-225a or § 52-572h, must be construed to represent the total of the claimant's "recoverable economic damages" and "recoverable noneconomic damages," which are defined in § 52-572h (a) as the total damages *reduced by* the amount attributable to the claimant's percentage of negligence. Thus, the plaintiff argues that because the challenged language contemplates a reduction that has already been made, the statute cannot rationally be administered and, consequently, the trial court should have made no collateral source reduction. We reject this argument because the interpretation of the term "recoverable damages" urged by the plaintiff is inconsistent with the intent of the legislature as reflected in the statutory scheme as a whole.

The trial court concluded that the reduction for collateral sources identified in the challenged language refers to the reduction attributable to the claimant's negligence that had been applied to the total damages to calculate the recoverable damages. Although we

---

[10] Because the plaintiff has not presented a separate and independent analysis of the vagueness doctrine under the state constitution, we analyze the claims under federal constitutional standards only. *State* v. *Johnson,* 227 Conn. 611, 614, 630 A.2d 69 (1993).

acknowledge that the collateral source provision of § 52-225a is not a model of clarity, we agree with the trial court's reasonable construction of the statute. "In determining the meaning of a statute, [it] must be considered as a whole, with a view toward reconciling its separate parts in order to render a reasonable overall interpretation." (Internal quotation marks omitted.) *Broadley* v. *Board of Education,* 229 Conn. 1, 6–7, 639 A.2d 502 (1994). The language of § 52-225a mirrors other provisions of the statutory scheme that require a reduction of the damages awarded to a claimant on the basis of the percentage of the claimant's own negligence. See General Statutes § 52-572h (a) (3), (a) (4) and (b). Indeed, when viewed in the context of the entire legislative scheme, it is apparent that the challenged language is meaningful only if construed in a manner consistent with the other similar statutory provisions. Furthermore, the trial court's construction comports with the intent of the legislature, as reflected in the statute's legislative history, to effectuate an equitable apportionment of damages among the responsible parties. See, e.g., 29 H.R. Proc., Pt. 16, 1986 Sess., p. 5737, remarks of Representative William L. Wollenberg; 29 H.R. Proc., Pt. 22, 1986 Sess., pp. 8077, 8104, 8131, remarks of Representatives Martin M. Looney and Michael Rybak; 29 S. Proc., Pt. 10, 1986 Sess., p. 3439, remarks of Senator Richard Johnston.

The plaintiff's reading of the collateral source provision of § 52-225a, by contrast, would render the statutory language meaningless. Under the plaintiff's construction, a claimant would never be entitled to a decrease in the collateral source reduction because the "amount equal to the reduction in the claimant's recoverable damages attributable to his percentage of negligence" would always be zero. Such a result is contrary to the well established rule of statutory construction that "we will not read a statute in such a way as

to render a portion of it superfluous." *State* v. *Christiano,* 228 Conn. 456, 472, 637 A.2d 382 (1994); *White* v. *Burns,* 213 Conn. 307, 320, 567 A.2d 1195 (1990); 2A J. Sutherland, Statutory Construction (5th Ed. Singer 1992 Rev.) § 46.06.

We reject, therefore, the construction of § 52-225a urged by the plaintiff, and conclude that the statute, as properly interpreted by the trial court, is sufficiently clear to allow for its fair administration. See *Seals* v. *Hickey,* supra, 186 Conn. 344. Accordingly, the plaintiff cannot prevail on his constitutional claim.

## B

Both parties challenge the trial court's calculation of the defendant's proportionate share of damages. The defendant claims that the trial court improperly applied the net collateral source reduction to the total amount of damages found by the jury instead of to the defendant's proportionate share.[11] The plaintiff agrees with the trial court's application of the net collateral source reduction, but contends that that reduction should have been offset by the attorney's fees that he expended in achieving pretrial settlements with Garnett and REM Transport, Ltd. We conclude that the trial court properly calculated the defendant's proportionate share of the damages.

Our review of the trial court's calculation of the defendant's proportionate share of damages under § 52-225a is guided by well established principles of statutory construction. "Our fundamental objective is

[11] Under the defendant's interpretation of the statute, the amount of damages attributable to the plaintiff's contributory negligence ($375,000) would be reduced from the total damages ($1,500,000) to calculate the recoverable damages ($1,125,000). These would be multiplied by the ratio set forth in General Statutes § 52-572h (d) (35 percent/75 percent) to calculate the defendant's proportionate share of damages ($525,000). The defendant contends that it is at this point that the collateral source reduction ($450,000) should be applied, leaving a net award to the plaintiff of $75,000.

to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter.'' (Citations omitted; internal quotation marks omitted.) *State* v. *Metz,* 230 Conn. 400, 409, 645 A.2d 965 (1994).

With these principles in mind, we first examine the defendant's claim. Section 52-225a provides that the net collateral source reduction must be applied to the ''damages . . . awarded to compensate the claimant.'' The defendant asserts that the term ''award'' as used in this context means the defendant's proportionate share of the recoverable damages. We can find, however, no support for this construction in the text of the statute. To the contrary, the challenged language itself, which contains no express qualification of the amount of the award, supports the trial court's application of the collateral source reduction to the total damages found by the jury.

Subsequent revisions to the collateral source reduction provision of Tort Reform I comport with our construction. Section 52-225a was revised effective October 1, 1987, by No. 87-227 of the 1987 Public Acts (Tort Reform II), for the purpose of clarifying the manner in which the collateral source reduction and other offsets are to be applied in the calculation of a claimant's recoverable damages. See, e.g., 30 H.R. Proc., Pt. 16, 1987 Sess., p. 5664, remarks of Representative Richard D. Tulisano. Under Tort Reform II, when ''damages are *awarded to* compensate the claimant, the court shall reduce the amount of *such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h* . . . .'' (Empha-

sis added.) General Statutes (Rev. to 1993) § 52-225a. "Economic damages" are defined as "compensation determined by the trier of fact for pecuniary losses . . . ." General Statutes (Rev. to 1993) § 52-572h (a). Thus, the current statute defines "award" in terms of a claimant's total loss, as opposed to the liability assessed against any particular defendant. In addition, the provisions of Tort Reform II make clear that the collateral source reduction and other offsets are to be included within the calculation of recoverable economic damages; General Statutes (Rev. to 1993) § 52-572h (a) (3); and, therefore, must be applied *before* the calculation of the defendant's proportionate share of damages. General Statutes (Rev. to 1993) § 52-572h (d). We conclude, therefore, that the trial court properly applied the collateral source reduction of § 52-225a against the total damages found by the jury to be necessary to compensate the plaintiff.

We next examine the plaintiff's claim that the trial court improperly failed to offset the collateral source reduction by the attorney's fees that he expended in obtaining the settlement of his claims against Garnett and REM Transport, Ltd. This claim is based on the following language of § 52-225a: "[t]he court shall also take testimony of any amount which has been paid, contributed, or forfeited by, or on behalf of, the claimant . . . to secure his right to any collateral source benefit which he is receiving as a result of such injury or death, and shall offset any reduction in the award by any such amount." We agree with the trial court that the plaintiff was not entitled to the claimed offset.

The common law rule in Connecticut, also known as the "American Rule,"[12] is that " 'attorney's fees and

[12] By contrast, the common law rule in England has traditionally been that counsel fees are awarded by the court to successful parties. See generally *Alyeska Pipeline Service Co.* v. *Wilderness Society*, 421 U.S. 240, 247 n.18, 95 S. Ct. 1612, 44 L. Ed. 2d 141 (1975); *Doe* v. *Heintz*, 204 Conn. 17, 22–23 and n.8, 526 A.2d 1318 (1987).

ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception.' " *Chrysler Corp.* v. *Maiocco,* 209 Conn. 579, 590, 552 A.2d 1207 (1989), quoting *Marsh, Day & Calhoun* v. *Solomon,* 204 Conn. 639, 652, 529 A.2d 702 (1987). Because we must "respect the legislative prerogative of choosing the special circumstances under which [attorney's fees] awards may be made"; *Doe* v. *Heintz,* 204 Conn. 17, 29, 526 A.2d 1318 (1987); we require a clear expression of the legislature's intent to create a statutory exception. "To put it simply, when the General Assembly want[s] to authorize the award of attorney's fees it kn[ows] how to do it." *Chrysler Corp.* v. *Maiocco,* supra, 593.

The plaintiff has failed to demonstrate that he was entitled to offset his attorney's fees against the collateral source reduction because there is no indication that the legislature intended to provide a claimant with such an offset. Section 52-225a contains no reference to attorney's fees. Moreover, although the legislative history of the statute indicates that the legislature contemplated an offset for certain costs, such as insurance premiums, incurred to purchase or obtain the collateral source benefits, we find nothing in the history of the statute to suggest that the legislature intended that a similar offset be allowed for attorney's fees. See 29 S. Proc., Pt. 10, 1986 Sess., p. 3431, remarks of Senator Anthony Avallone; cf. General Statutes § 52-225b. The trial court, therefore, properly concluded that the plaintiff had no statutory right to offset the collateral source reduction by the amount of the attorney's fees he incurred in negotiating a settlement of his claims against Garnett and REM Transport, Ltd.

The judgment is affirmed.

In this opinion the other justices concurred.