[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULINGS ON POST VERDICT MOTIONS
The above-captioned case was tried to a jury, which rendered verdicts on December 22, 1998. At the commencement of the trial, the plaintiff settled his claims against defendants Romney Ames, Ronald Ames and Lillian Ames for the sum of $1500. The plaintiff had obtained a default against defendant Woodbury Ski Racquet, Inc. The remaining defendant, Roderick Taylor, elected to represent himself, appearing pro se. He was asked if he intended to secure the services of a lawyer. He responded in the negative and was advised at the beginning of the case that the court was required to hold him to the same rules and procedures as apply to lawyers. In the course of the trial Mr. Taylor noted that he had tried cases pro se previously. Mr. Taylor did not at any time after the assignment to the undersigned court for trial request a continuance for the purpose of securing the services of a lawyer.
After the jury rendered its verdicts against each of the remaining defendants, the court scheduled a collateral source reduction hearing. The plaintiff moved for an award of attorney fees and punitive damages on his Connecticut Unfair Trade Practices, Conn. Gen. Stats. § 41-110a, et seq. ("CUTPA"), claim against the defaulted defendant, Woodbury Ski Racquet, Inc. Mr. Taylor, who had filed timely motions to set aside the verdict against him and for remittitur and for a new trial, appeared at the scheduled hearing without counsel. The court continued to April 9, 1999, the hearing and argument on pending CT Page 4210 motions. On that date, a lawyer entered an appearance on behalf of both Roderick Taylor and Woodbury Ski Racquet, Inc. On the same date, defendants' counsel filed amended motions to set aside the verdict, for a new trial, and for remittitur as to the verdict against Roderick Taylor.
Defendants' counsel also filed motions to set side, for new trial, and for remittitur as to Woodbury Ski Racquet, Inc. These motions were denominated "amended" motions, however, no such motions had been filed before April 9, 1999, on behalf of this defendant. The plaintiff has raised no objection to the timeliness of the motions filed on behalf of Woodbury Ski 
Racquet, Inc., and argued the motions on the merits. This court therefore concludes that the plaintiff waived any objections based on time limits for the filing of the motions.
The court heard argument and denied the plaintiff's Motion for Award of Punitive Damages as Against the Defendant Woodbury Ski 
Racquet, Inc. and Plaintiff's Motion for Attorney's Fees as Against the Defendant Woodbury Ski Racquet, Inc.
Counsel requested a week to brief the issue whether collateral source reductions are to be applied to the gross amount of damages found by the jury or to the net amount of the actual award to the plaintiff.
The court finds as follows with regard to the defendants' post-trial motions.
Motion to Set Aside Verdict Against Def. Woodbury Ski RacquetInc. and for New Trial
At the time of trial, Woodbury Ski Racquet Inc. was not represented by counsel and had been defaulted. On the basis of the default, the court submitted the claim for damages to the jury as a hearing in damages. Now that this defendant has appeared in the case by counsel, that counsel raises issues concerning the effect of a default on an inactive corporation. The corporation asserts in its brief that the verdict against this party should be set aside because there was not evidence to support a finding that the injuries incurred by the plaintiff were proximately caused by any action of this entity. Specifically, the movant claims that there was insufficient evidence that the sledding activities at issue were being conducted on its behalf as a de facto corporation after it ceased CT Page 4211 to have legal existence. The only evidence adduced concerning Woodbury Ski Racquet, Inc. was to the effect that the corporation had been dissolved on March 15, 1985, nearly eight years before the incident at issue, but that it continued to be listed as the record owner of the property where the incident at issue occurred. Contrary to his present argument, the plaintiff did not allege negligence based on a defect in the premises, but only in the operation of the sledding operation on those premises; and his claim, at paragraph 21, was that Taylor was acting as an agent of the corporation in operating the sledding business. At page 5 of the complaint, the plaintiff alleged that "Roderick Taylor is responsible for the services offered to the public and for the safety of the premises and the users thereof." The complaint does not make the same claim against the dissolved corporation.
The jury rendered a verdict in which it made the same finding of damages against the corporation as against defendant Taylor, plus an additional award reflecting the claim that failure to provide emergency services to the plaintiff constituted a violation of CUTPA.
This court concludes that the judgment against Woodbury Ski 
Racquet, Inc. should be set aside. Even in a hearing in damages, where the factual allegations of the complaint are deemed proven by the entry of the default, see Costello v. Hartford Instituteof Accounting, Inc., 193 Conn. 160, 161 n. 1 (1984), a plaintiff must still prove that the damages claimed were caused by the conduct alleged. Mechanics Savings Bank v. Tucker, 178 Conn. 640,644 (1979); United National Indemnity Co. v. Zullo, 124, 130 (1956). In order to have found that any damages suffered by the plaintiff were proximately caused by the actions of the defaulted defendant, the jury would have to have found that it was the corporation that determined where and under what circumstances patrons could use sleds and what facilities to have on hand for them in case of injuries, or that Mr. Taylor was acting as an agent of the corporation. The only evidence of any conduct by the corporation was the evidence that the property was still in its name. There was no evidence from which the jury could have concluded that defendant Taylor was acting on behalf of or as an agent of the corporation in operating the sledding hill.
Though the plaintiff argues that the landowner would be liable because of general principles of premises liability, the claims made concern not the condition of the premises but the CT Page 4212 operation of a sledding enterprise on that premises. The claims of negligence listed in the complaint, at paragraphs 22(a)-(h), are claims regarding the operation of the sledding hill by defendant Taylor. Count Three alleges a violation of CUTPA, by the method of operating the sledding activities.
The evidence did not indicate that any entity other than defendant Taylor made decisions about the manner of operating that enterprise, and there was no evidence to support a conclusion that he acted on behalf of the corporation, which the evidence indicated had gone out of existence years before. There was no evidence from which the jury could reasonably have found that the actions of Woodbury Ski Racquet, Inc. proximately caused any of the injuries claimed by the plaintiff.
The Supreme Court has identified the standard for setting aside a verdict in Palomba v. Gray, 208 Conn. 21, 24 (1988): "[t]he trial court should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion, and should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of the legal principles, or as to justify the suspicion that they or some of them were influenced by prejudice, corruption or partiality," citing Burr v. Harty,75 Conn. 127, 129 (1902). See also Young v. Data Switch Corp.,231 Conn. 95, 100-101 (1994).
Under the evidence, the conclusion that Woodbury Ski 
Racquet, Inc. was functioning and was operating the sledding area at the time of the incident or that defendant Taylor was acting as its agent could only have proceeded from a mistake by the jury in applying the legal principle that the verdict must be based on a fair preponderance of the evidence as to proximate cause, and not on speculation. There was no evidence that Woodbury Ski 
Racquet, Inc. employed Roderick Taylor at the time or that it was in any way in operation as a corporation after it was dissolved. All that was shown was that the property had not been conveyed to shareholders after the dissolution. This court overlooked the above analysis in submitting the claims against the corporation to the jury, but must not, under the principles of Breen v.Phelps, 186 Conn. 86, 99-100 (1982), refuse to acknowledge the merit of a later argument simply because it leads to a different result than a prior ruling made without the benefit of that argument. CT Page 4213
The plaintiff has the obvious concern that defendant Taylor, who was identified in the evidence as the shareholder to whom the assets of the dissolved corporation should have been conveyed upon dissolution, will somehow avoid being title owner of the property lest it be subject to execution in the judgment against him. As counsel for both defendants has acknowledged at page 10 of the brief in support of the motion to set aside the verdict against the corporation, if actual conveyance to shareholders does not occur as it should, a party may seek relief in a proceeding to determine the shareholder's equitable ownership.
The motion to set aside the verdict against Woodbury Ski 
Racquet, Inc. is granted.
Motion to Set Aside Verdict Against Roderick Taylor and for NewTrial
Defendant Taylor has moved to set aside the verdict on a number of grounds, most of which relate to events at trial to which he made no objection. Specifically, in that vein, he now claims that some of the arguments of plaintiff's counsel were improper, that inadmissible evidence was presented, and that there was harmful error in the charge given to the jury. Defendant Taylor made no objection to the arguments of plaintiff's counsel at the time they were made, nor did he ask for a curative instruction from the court. The court instructed the jury, however, that arguments by counsel do not constitute evidence and should be taken simply as argument. With regard to evidence now claimed to have been inadmissible, the movant's counsel concedes that his client did not object at the time the evidence was offered.
Defendant Taylor's arguments imply a duty of the court to assist a pro se party. While a judge trying a case in which one party is acting pro se must be careful, as always, to preserve the fairness of the trial, the adversary system is not suspended, and the judge cannot become the adviser or tactician for the pro se party. People who choose to represent themselves must be accorded the dignity of their own choice. They, like lawyers, must be assumed to be making choices of strategy, and the court cannot presume to determine when a failure to object is tactical and when it is not. The mention by plaintiff's counsel of the occupation of the plaintiff's father was a risky one: a jury might as easily be offended or put off by such an affiliation. CT Page 4214 Defendant Taylor's failure to object could have proceeded from his calculation that the jury would react negatively to this information, and, indeed, to plaintiff's counsel's other arguments to the jury.
In his brief, defendant Taylor implies that if a party chooses to try a case pro se and then hires counsel, his omissions or mistakes of strategy at trial should entitle him to a new trial. Such a suggestion overlooks the fact that litigants are entitled to one trial, not two, and that dissatisfaction at the result of the decision to try the case pro se does not create a right to burden one's adversary with the expense in time and money of a second trial. The Supreme Court has ruled that failure to object at the proper time or to request a curative instruction or charge constitutes a waiver of a claim of error. Skrzypiec v.Noonan, 228 Conn. 1, 13 (1993).
The movant claims that it was error for this court not to allow him to amend his special defenses to add claims arising under certain statutes concerning the sport of skiing. The motion for leave to amend was not made until after the close of evidence. Defendant Taylor sought to apply to a sledding accident an assumption of risk doctrine in statutes, Conn. Gen. Stat. § 29-212 through 214, that, on their face, referred only to the sport of skiing. Had the amendment been made in timely fashion, the plaintiff would have had an opportunity to move to strike and to contest the application of these statutes to sledding and other activities. The court could not have allowed amendment during the trial without depriving the plaintiff of his opportunity to move to strike the statutory claim.
The movant implies that the court had an obligation to allow amendment because of his pro se status, suspending the usual standards of assessing prejudice to other parties. Causing the plaintiff to contest a statute not mentioned in the pleadings at any time for three years, inserting a legal doctrine not previously put at issue, would indeed be unfair. Unlike the situation in Tarzia v. Great Atlantic Pacific Tea Co.,52 Conn. App. 136, 144 (1999), an amendment to add statutory defenses would cause surprise and delay because the applicability of these statutes to sports other than skiing is unclear. The last minute invocation of statutes is so fraught with problems that there is a specific Practice Book requirement governing the issue. Section10-3 of the Practice Book requires that "when any claim made in a . . . special defense or other pleading is grounded on a CT Page 4215 statute, the statute shall be specifically identified by its number." Had this court granted the motion for leave to amend, it would in fairness have had to grant a continuance of the trial to permit the plaintiff to research the issue of the applicability of the statute and perhaps even to have secured expert witnesses, then allow briefs and argument on the issue, all while a jury waited, with the almost certain result that jurors would be lost to conflicting obligations if the trial were extended beyond the announced time frame to the extent necessary. It is likely that the legislative history of the statutes at issue would have had to have been obtained to ascertain the scope of the statute's intended coverage. Such information could not be obtained and considered in the context of a jury trial that had already commenced.
Defendant Taylor suggests that by claiming in his special defenses that the plaintiff failed to comply with the regulations of the ski area and to heed warnings, he effectively pleaded the substance of the statutes concerning the liability of ski areas for ski accidents. The wording of the pleadings does not suggest that the defendant was stating any statutory protection or standard; rather, the facts alleged merely sound in contributory negligence. The pleading that the court deemed to be the defendant's answer and special defenses did not identify failure to wear goggles as a special defense.
The movant further claims that it was error not to charge on a statutory defense not stated in the pleadings. Even if perceived errors in a jury charge were a basis for a motion to set aside a verdict, this court cannot agree that the pleadings as they stood required a charge on a statute not pleaded.
Defendant Taylor claims as an additional ground for setting aside the verdict against him that this court should not have sent the jury back to consider the issue of noneconomic damages. The jury came in with a verdict in which it filled in a dollar amount for economic damages but filled in a zero on the blank designated for noneconomic damages. The evidence in the case was to the effect that the plaintiff had suffered fractures to the bones of his face and loss of teeth, and that he had undergone corrective surgeries. There was absolutely no way a reasonable jury could have concluded that though the medical expenses were warranted, there had been no actual physical injury. In Childs v.Bainer, 235 Conn. 107, 122 (1995), the Supreme Court stated that it was not an abuse of discretion for a court not to order an CT Page 4216 additur where a jury found no noneconomic damages. In that case, the evidence at trial, including the plaintiff's statement in the emergency room after the automobile accident, would have supported a jury finding that the plaintiff had not come into contact with any part of the interior of his car and had returned to work the next day without taking any pain medication. The jury in Childs v. Bainer, supra, 235 Conn. 107, therefore, could reasonably have found from the evidence that the only injury the plaintiff had suffered was his expenditures on medical assessments and that he had not suffered any actual physical injury.
Very recently, in Gladu v. Sousa, 52 Conn. App. 796
(4/20/99), the Appellate Court approved an order of additur where a jury failed to award noneconomic damages when the evidence unmistakably established that the accident had caused physical injuries to the plaintiff.
No reasonable jury could logically have found in the case before this court that the plaintiff incurred medical expenses that had no basis in actual physical injury. The evidence was undisputed and unquestioned that the plaintiff's teeth lay in the snow after the incident and that his facial bones were fractured. Even without considering pain and suffering, such evidence indicates a physical injury. A zero award on noneconomic damages can only have resulted from the mistake of thinking that compensation for some elements of damages was merely discretionary, or a mistake in failing to consider that noneconomic damages include not only such subjective elements as pain and suffering, but also the physical injury itself and loss of parts of the body. This court did not, as the movant suggests, direct the jury to find noneconomic damages, but only to reconsider the issue. The jury's finding is supported by the uncontroverted evidence that the plaintiff suffered loss of teeth, a fracture of facial bones, inability to eat normally for a considerable period of time, loss of the ability to speak normally, and physical pain.
Practice Book § 16-17 authorizes the judicial authority to return a jury for a second consideration "if it determines that the jury have mistaken the evidence in the cause and have brought in a verdict contrary to it . . ." Conn. Gen. Stat. §52-223 gives the court the same authority. Neither provision conditions this authority on the motion of a party. CT Page 4217
Deduction of Collateral Source Benefits
The jury found that the plaintiff had suffered economic damages in the amount of $60,000 and noneconomic damages in the amount of $40,000. Finding that the plaintiff was fifty percent at fault, the jury awarded him $50,000 against defendant Taylor. Applying the percentage of fault found to the economic damages, the award represents economic damages in the amount of $30,000. At a collateral source hearing conducted pursuant to § 52-225a
Conn. Gen. Stat. evidence was presented to establish that $20,257.12 was paid by medical insurance, and that the cost of securing the right to this collateral source benefit was a medical insurance premium in the amount of $1845.84. The plaintiff asserts that the reduction of $18,411.28 should be applied against the total damages of $100,000 found by the jury, then "dividing the result by 2" for a net verdict against defendant Taylor in the amount $40,794.36.
The plaintiff's calculation is supported by the Supreme Court's interpretation of the wording of Conn. Gen. Stat. §52-225a in Fleming v. Garnett, 231 Conn. 77 (1994). That portion of the legislation known as Tort Reform II provides that if "damages are awarded to compensate the claimant, the court shall reduce the amount of such award which represents economic damages, as defined in subdivision (1) of subsection (a) of section 52-572h, by an amount equal to the total of amounts determined to have been paid under subsection (b) of this section less the total of amounts determined to have been paid under subsection (c) of this section, except that there shall be no reduction for . . . (2) that amount of collateral sources equal to the reduction in the claimant's economic damages attributable to his percentage of negligence pursuant to section 52-572h."
The statute requires that collateral sources be deducted only from the "award which represents economic damages." In Fleming v.Garnett, supra, 231 Conn. 90, the Supreme Court ruled that this phrase refers to the total economic damages found, not the lesser amount arrived at after applying the plaintiff's percentage of negligence. It therefore found that the correct method of reduction is to subtract the collateral sources from the total economic damages found, then to apply the percentages of negligence. The Appellate Court approved the same approach inBower v. D'Onfro, 38 Conn. App. 685, 698-700 (1995).
Reducing the $60,000 of economic damages by $18,411.28, the CT Page 4218 remainder is $41,588.72. Adding the $40,000 of noneconomic damages, the total damages awarded less the deduction for collateral sources is $81,588.72. Since the plaintiff was found to be 50% at fault, pursuant to Conn. Gen. Stat. § 52-572h(a) and (d) he recovers 50% of $81,588.72, that is, $40,794.36.
Defendant Taylor asserts that the award against him should be further reduced by the $1500 received by the plaintiff in his settlement with the Ames defendants. The jury found those defendants not to be at fault. On the verdict form, the jury indicated that the percentage of negligence attributable to these defendants was zero. Conn. Gen. Stat. § 52-572h(n) provides that an award of damages "is reduced by the amount of the released person's percentage of negligence determined in accordance with subsection (f) of this section." Since that amount was zero, there is no reduction. Section 52-225b provides that" "Collateral sources' do not include amounts received by a claimant as a settlement." It therefore appears that there is no basis for reducing the plaintiff's verdict by the amount he received from the released defendants.
Motion for Remittitur
Defendant Taylor has moved for remittitur. The court finds that the amount of the award is supported by the facts concerning the damages sustained by the plaintiff and that it is not excessive as a matter of law, the standard imposed by Conn. Gen. Stat. § 52-216a.
Conclusion
The defendants' motions for new trial are denied. The motion to set aside the verdict against Woodbury Ski Racquet, Inc. is granted. The motion to set aside the verdict against defendant Roderick Taylor is denied, however, that verdict is hereby reduced to $40,794.36 to reflect the application of Conn. Gen. Stat. § 52-225a. The motion for remittitur is denied.
Judgment shall enter in favor of the plaintiff against defendant Roderick Taylor in the amount of $40,794.36. Judgment shall enter in favor of defendant Woodbury Ski Racquet, Inc., no damages having been proven to have been proximately caused by any negligence by that entity. The plaintiff shall recover his costs. CT Page 4219
Beverly J. Hodgson Judge of the Superior Court