## ROXANN AMES *v.* COMMISSIONER OF MOTOR VEHICLES
### (AC 21320)

Schaller, Mihalakos and Dranginis, Js.

(*One judge dissenting*)

Argued January 18—officially released July 9, 2002

*Joanne S. Faulkner*, for the appellant (plaintiff).

*Gary M. Case*, for the appellee (intervening defendant Western Surety Company).

*Opinion*

DRANGINIS, J. The plaintiff, Roxann Ames, appeals from the judgment of the trial court affirming the decision and award by the defendant commissioner of motor vehicles (commissioner) that, in accordance with General Statutes § 14-52,[1] she is not entitled to recover punitive damages and attorney's fees under the surety bond issued by Western Surety Company (Western Surety).[2] On appeal, the plaintiff, in essence, raises two

---

[1] General Statutes § 14-52 provides in relevant part: "(a) No person, firm or corporation may engage in the business of the buying, selling, offering for sale or brokerage of any motor vehicle or the repairing of any motor vehicle without having been issued either a new car dealer's, a used car dealer's, a repairer's or a limited repairer's license. . . .

"(b) . . . (2) Each applicant for a new car dealer's or a used car dealer's license shall furnish a surety bond in the amount of twenty thousand dollars. . . .

"(4) Each such bond required under subdivisions (1) to (3), inclusive, of this subsection shall be conditioned upon the applicant or licensee complying with the provisions of any state or federal law or regulation relating to the conduct of such business and provided as indemnity for any loss sustained by any person by reason of any acts of the licensee constituting grounds for suspension or revocation of the license or such licensee going out of business. Such bond shall be executed in the name of the state of Connecticut for the benefit of any aggrieved party, but the penalty of the bond shall not be invoked except upon order of the commissioner after a hearing held before him in accordance with the provisions of chapter 54."

[2] Pursuant to General Statutes § 52-107 and Practice Book § 9-18, Western Surety filed a motion for permission to intervene as a party defendant, which motion was granted.

claims, namely, that (1) the doctrine of res judicata barred the commissioner from finding Western Surety liable under the surety bond for actual damages only and (2) the court improperly concluded, as a matter of law, that § 14-52 precludes an award for punitive damages and attorney's fees. We affirm the judgment of the trial court.

The following facts are relevant to our resolution of the plaintiff's appeal. The underlying event in this case involved the plaintiff and A.P.L. Auto Consulting, Inc., also known as Discount Auto Sales, a used automobile dealer (dealer). In 1995, the plaintiff purchased a motor vehicle from the dealer. Over protest by the plaintiff, in 1997, the dealer repossessed the vehicle. As a result of the repossession, the plaintiff filed an action against the dealer, alleging, in pertinent part, breach of contract and unfair trade practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The plaintiff demanded statutory, actual, punitive and treble damages. The court rendered a default judgment in favor of the plaintiff after the dealer failed to appear and awarded damages in the amount of $20,286.40 plus costs of $280.60. The award included punitive damages and attorney's fees.[3]

Subsequently, the dealer went out of business and failed to pay the judgment. Pursuant to § 14-52, however, the dealer had obtained a surety bond for $20,000, which was issued by Western Surety. After the expiration of the 180 day waiting period of General Statutes § 52-400e,[4] the commissioner invoked the surety bond

---

[3] Under CUTPA, a trial court, within its discretion, may award punitive damages and attorney's fees to a prevailing plaintiff. See *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 795, 720 A.2d 242 (1998).

[4] General Statutes § 52-400e provides in relevant part: "Whenever a judgment in a civil action which relates to activities for which a license is required has been rendered against a business which is licensed by a state or local licensing authority and which remains unpaid for one hundred eighty days after receipt by the judgment debtor of notice of its entry and the judgment has not been stayed or appealed, the state or local licensing

on the plaintiff's behalf. The commissioner noted the court's prior award of damages, but found that the plaintiff suffered actual damages of $5650, an amount consisting of her down payment, financing payment and costs. The commissioner then concluded that the balance of the court's award of attorney's fees and punitive damages was not "recoverable under the subject bond," as set forth in § 14-52, and thus ordered Western Surety to pay $5650 to the state of Connecticut for the benefit of the plaintiff.

The plaintiff filed a petition for reconsideration, which the commissioner denied. The plaintiff then appealed to the Superior Court pursuant to General Statutes § 4-183. In affirming the decision of the commissioner, the court concluded that § 14-52, the surety bond requirement statute, precludes an award of punitive damages and attorney's fees. This appeal followed.

I

The plaintiff first contends that the court's award of damages of $20,286.40 constituted a final judgment, and, therefore, the doctrine of res judicata barred the commissioner from disturbing that award and finding the surety liable for only $5650. We are not persuaded.

"The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties and their privies in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action

authority shall consider such failure to pay, if deliberate or part of a pattern of similar conduct indicating recklessness, as a basis for the revocation, suspension or conditioning of, or refusal to grant or renew such license. . . ."

which were actually made or which might have been made. . . . The applicability of res judicata raises a question of law that is subject to our plenary review. . . . We therefore must determine whether the trial court's decision is legally and logically correct." (Citations omitted; internal quotation marks omitted.) *Richards* v. *Richards*, 67 Conn. App. 381, 383, 786 A.2d 1247 (2001). "It is axiomatic that in applying the doctrine of res judicata we remain cognizant that [t]he scope of matters precluded necessarily depends on what has occurred in the former adjudication." (Internal quotation marks omitted.) Id., 384.

We conclude that the doctrine of res judicata did not bar the commissioner's, and subsequently the court's, determination in the present case. The issues before the court that rendered judgment against the dealer greatly differed from those before the commissioner and the court in the subsequent action. In the action against the dealer, the court was faced with a controversy solely between the dealer and the plaintiff after the dealer wrongfully had repossessed the plaintiff's motor vehicle.

The issue regarding the extent of the liability of Western Surety pursuant to the surety bond provision was not before the court in the prior action against the dealer. In fact, it was not until after the judgment was rendered against the dealer that the dealer went out of business, thereby implicating Western Surety in the situation. Moreover, the issues before the commissioner, and subsequently before the court on appeal from the commissioner's decision, consisted of whether the dealer's actions triggered the surety bond provision, and Western Surety's liability, pursuant to § 14-52. The determinations of the commissioner and the court solely referred to Western Surety's liability and did not disturb the prior judgment regarding the dealer's liability for wrongful repossession.

We conclude, therefore, that the commissioner's decision holding Western Surety liable for an amount of $5650 pursuant to the surety bond was not precluded by the doctrine of res judicata.[5]

## II

We now address the plaintiff's primary claim that this court should set aside the judgment of the trial court because, pursuant to § 14-52, she was entitled to recover punitive damages and attorney's fees from Western Surety. Specifically, the plaintiff contends that the phrase contained in § 14-52 (b) (4) that the surety bond will be "provided as indemnity for *any loss sustained* by any person by reason of any acts of the licensee constituting grounds for suspension or revocation of the license or such licensee going out of business," necessarily includes punitive damages and attorney's fees. (Emphasis added.) Therefore, the plaintiff argues, the court improperly concluded, as a matter of law, that § 14-52 precludes an award of punitive damages and attorney's fees. We are not persuaded.

In this case, because the surety bond itself is not part of the record, nor do the parties invoke its terms, the dispositive issue to determine is whether § 14-52 confers on the plaintiff the right to recover punitive damages and attorney's fees. That issue is a matter of statutory interpretation, as well as an issue of first impression for this court, over which our review is plenary.[6] See *Smith* v. *Smith*, 249 Conn. 265, 280, 752 A.2d 1023 (1999).

[5] We note that the plaintiff appears to intertwine part of her res judicata claim with her second claim on appeal regarding the proper recovery under General Statutes § 14-52. The plaintiff seems to contend that res judicata barred the commissioner from altering the original award because § 14-52 provides that the judgment of the original trial court has a preclusive effect. As will be evident from our conclusion, that interpretation of § 14-52 lacks any merit.

[6] In arriving at our conclusion, we take note of *Western Surety Co.* v. *State*, Superior Court, judicial district of New Britain, Docket No. CV 990494408S (December 15, 1999). We find guidance from that decision in which the

Several well settled principles govern our interpretation of § 14-52. "When we construe a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . . Furthermore, [w]e presume that laws are enacted in view of existing relevant statutes . . . because the legislature is presumed to have created a consistent body of law. . . . We construe each sentence, clause or phrase to have a purpose behind it. . . . In addition, we presume that the legislature intends sensible results from the statutes it enacts." (Citations omitted; internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 357, 757 A.2d 549 (2000).

"When the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature. . . . When we are confronted, however, with ambiguity in a statute, we seek to ascertain the actual intent by looking to the words of the statute itself . . . the legislative history and circumstances surrounding the enactment of the statute . . . and the purpose the statute is to serve. . . . We note also that [a] statute should not be interpreted in any way to thwart its purpose . . . and that [i]n construing a statute, common sense must be used and courts will assume that [the legislature intended to accomplish] a reasonable and rational result . . . ." (Citations omitted; internal quotation marks omitted.)

court addressed and resolved the identical issue that we now face. The trial court in the matter before us also relied on *Western Surety Co.*

*Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 666–67, 560 A.2d 975 (1989).

Before directly analyzing the issue, an explanation of basic principles governing suretyship law provides guidance. "[T]he general purpose of a suretyship contract is to guard against loss in the event of the principal debtor's default. . . . [T]he obligation of a surety is an additional assurance to the one entitled to the performance of an act that the act will be performed. . . . [T]he liability of sureties is to be determined by the specified conditions of the bond . . . . [W]hen a bond is required by statute, a court will read the statute into the contract between the principal, surety and obligee." (Citations omitted; internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, supra, 254 Conn. 358–59.

"A legally mandated bond is a secondary obligation required by law, whether the obligee or beneficiary is a government, a class of persons to whom the principal obligor may owe an obligation, or a particular person. . . . When . . . a legally mandated bond is deemed to contain terms set forth in the law that requires that it be provided, the legally mandated bond is treated as containing those terms. . . ." Restatement (Third), Suretyship and Guaranty § 71 (1) and (2), pp. 284–85 (1996). General Statutes § 14-52 establishes legally mandated surety bonds for new and used motor vehicle dealers. As a condition for engaging in business, § 14-52 requires motor vehicle dealers to procure a surety bond in the amount of $20,000. General Statutes § 14-52 (b) (4) further provides in relevant part that those legally mandated bonds "shall be conditioned upon the applicant or licensee [the motor vehicle dealer] complying with the provisions of any state or federal law or regulation relating to the conduct of such business and provide as indemnity for *any loss* sustained by any person by reason of any acts of the licensee constituting

grounds for suspension or revocation of the license or such licensee going out of business . . . ." (Emphasis added.)

With those principles in mind, we turn to the dispositive issue at hand, namely, whether the phrase "any loss" encompasses punitive damages and attorney's fees. We find the term "any loss" to be both generalized and ambiguous, and susceptible on its face to several different interpretations. That ambiguity is demonstrated by Webster's Third International Dictionary, which defines "any" as "one, indifferently out of more than two . . . one, some, or all indiscriminately of whatever quantity." Moreover, the statute fails to define "any loss." Accordingly, we turn to the legislative history behind § 14-52 to construe the meaning of "any loss." Upon examination of the legislative history and circumstances surrounding the enactment of the surety bond clause of § 14-52, as well as its relationship to other similar legislation, we hold that the legislature did not intend for the phrase "any loss" to encompass punitive damages and attorney's fees.

In 1984, the legislature amended § 14-52, through No. 84-508 of the 1984 Public Acts, to include a provision mandating that motor vehicle dealers obtain surety bonds. Prior to that amendment, when motor vehicle dealers went out of business, consumers often lacked any "avenue for recovery." 27 H.R. Proc., Pt. 8, 1984 Sess., p. 2709, remarks of Representative Christine M. Niedermeier. The legislative history surrounding the amendment demonstrates that the legislature added that provision to "provide *some* financial security to enable consumers to obtain reimbursement for *money owed to them*" by defunct motor vehicle dealers. (Emphasis added.) Id. Debate in the Senate additionally reveals that the legislature enacted the amendment to protect consumers. See 27 S. Proc., Pt. 9, 1984 Sess., pp. 3153–54, remarks of Senator William A. DiBella. The

legislative history again discloses that when the surety bond provision was further amended in 1993 in Public Acts 1993, No. 93-164, § 2, to increase the required amount of the bond posted, that those particular "surety bonds were established to provide *some* recourse for victims of fraudulent practices by motor vehicle dealers and repairers." (Emphasis added.) 36 S. Proc., Pt. 9, 1993 Sess., pp. 3219–20, remarks of Senator Thomas A. Colapietro.

The specific use of the word *some* proves quite revealing and pertinent to our resolution of the issue. By utilizing the word *some*, our legislature clearly did not intend for those motor vehicle dealer surety bonds to compensate consumers for *all* losses suffered as a result of a motor vehicle dealer's actions. The word *some* demonstrates that the legislature intended to limit the recovery of consumers. The statements of the legislators disclose that the surety bonds were not provided to make consumers whole for all costs or losses associated with a defunct motor vehicle dealer, but rather were meant to provide "*some* financial security." (Emphasis added.) 27 H.R. Proc., supra, p. 2709.

Further, the legislature explicitly provided that the surety bonds were enacted to "enable consumers to obtain reimbursement for *money owed to them.*" (Emphasis added.) Id. Again, the phrase "money owed to them," demonstrates that the legislature intended to restrict recovery under the surety bonds. The statement that consumers were entitled to recover "money owed" refers to the amounts presently due and owing to consumers by defunct motor vehicle dealerships. It does not refer to, or include, any subsequent costs that may result.

An award of punitive damages, "fulfills the salutary purpose of *fully* compensating a victim for the harm inflicted . . . ." (Emphasis added; internal quotation

marks omitted.) *Lord* v. *Mansfield,* 50 Conn. App. 21, 27, 717 A.2d 267, cert. denied, 247 Conn. 943, 723 A.2d 321 (1998). Here, as shown through the legislature's language, the legislative history clearly demonstrates that the surety bond provision was not enacted to wholly remunerate consumers. We therefore conclude that § 14-52 does not provide for punitive damages.

With particular respect to attorney's fees, we note that Connecticut adheres to a basic principle regarding awards of attorney's fees and expenses related to litigation known as the "American rule." Under the American rule, "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a [specific] contractual or statutory exception." (Internal quotation marks omitted.) *Rizzo Pool Co.* v. *Del Grosso,* 240 Conn. 58, 72, 689 A.2d 1097 (1997). As our Supreme Court has stated: "[W]hen the General Assembly wanted to authorize the award of attorney's fees it knew how to do it." *Chrysler Corp.* v. *Maiocco,* 209 Conn. 579, 593, 552 A.2d 1207 (1989).

In other surety contexts, our legislature has enacted statutes that specifically include the award of attorney's fees. For example, General Statutes § 14-176 stipulates that where title to a motor vehicle is in question, the party seeking the title may be required to obtain a surety bond. General Statutes § 14-176 further provides in relevant part that "[t]he bond shall be in an amount equal to one and one-half times the value of the vehicle . . . and conditioned to indemnify any prior owner . . . and any subsequent purchaser of the vehicle . . . against *any expense, loss or damage, including reasonable attorney's fees* . . . ." (Emphasis added.)

The legislature's inclusion of attorney's fees in § 14-176 is dispositive of the issue here. "Where a statute, with reference to one subject contains a given provision, the omission of such provision from a similar

statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." (Internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New London,* 236 Conn. 710, 717, 674 A.2d 845 (1996). The legislature's statement, in the context of § 14-176, that "any loss" includes attorney's fees, demonstrates that the legislature did not intend that "any loss" provided for in § 14-52, a similar statute, would encompass punitive damages and attorney's fees. See, e.g., *Doe* v. *Marselle,* 236 Conn. 845, 861, 675 A.2d 835 (1996).

Moreover, the legislature's use of the phrase "any loss" in enacting a statute is not unusual. In various other statutes, when our legislature has utilized the phrase "any loss," it has further provided that the term "any loss," "include[s] reasonable attorney's fees" or punitive damages. See, e.g., General Statutes § 42a-4A-211 (f) (liability to bank for "any loss and expenses, including reasonable attorney's fees," incurred by bank as result of cancellation of payment order); General Statutes § 42-110g (any person who suffers "any ascertainable loss" as result of violation of CUTPA entitled to award of actual and punitive damages, including reasonable attorney's fees); General Statutes §§ 8-265s (b) and 8-286c (b) ("guarantee shall secure the mortgagee up to the amount of the guarantee for *any loss* incurred by the mortgagee because of default of the mortgagor, including losses in principal balance, interest and fees and expenses due to foreclosure" [emphasis added]).

"Because we must respect the legislative prerogative of choosing the special circumstances under which [attorney's fees] awards may be made . . . we require a clear expression of the legislature's intent to create

a statutory exception" to the American rule. (Citation omitted; internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 94, 646 A.2d 1308 (1994). We cannot ascertain any such legislative intent here. Accordingly, we conclude that under § 14-52, the plaintiff was not entitled to recover punitive damages and attorney's fees in the calculation of "loss."[7]

The plaintiff presents several arguments in support of her claim that "any loss" as contained in § 14-52 includes punitive damages and attorney's fees, which we find necessary to address. Citing *Levick* v. *Norton*, 51 Conn. 461 (1884), and *Gionfriddo* v. *Avis Rent A Car System, Inc.*, 192 Conn. 280, 472 A.2d 306 (1984), the plaintiff in her brief asserts that our Supreme Court "has consistently mandated that a surety pay the type of treble or statutory damages at issue herein." The plaintiff's reliance on those cases is misplaced.

Neither of the cases on which the plaintiff relies stands for the proposition that § 14-52 provides for punitive damages and attorney's fees, nor do they even invoke a statute similar to § 14-52. In *Levick* and *Gionfriddo*, unlike in the present situation, the statutes involved specifically permitted an award of treble dam-

---

[7] We further note that our conclusion finds support in the Restatement, Security (1941), and also among many of our sister states that have enacted substantially similar statutes governing motor vehicle dealers and surety bonds. The Restatement takes the view that the obligation of a surety pursuant to a statutorily mandated bond does not include punitive damages. Restatement, Security, supra, §§ 73, 195, 198. Moreover numerous jurisdictions that have considered the exact issue have come to the same conclusion. See *Ferris* v. *Haymore*, 967 F.2d 946 (4th Cir. 1992); *Harper* v. *Home Ins. Co.*, 23 Ariz. App. 348, 533 P.2d 559 (1975); *Carter* v. *Agricultural Ins. Co.*, 266 Cal. App. 2d 805, 72 Cal. Rptr. 462 (1968); *Hubbel* v. *Aetna Casualty & Surety Co.*, 758 So. 2d 94 (Fla. 2000); *Guardianship of Estate of Smith* v. *Merchants Mutual Bonding Co.*, 211 Kan. 397, 507 P.2d 189 (1973); *United States Fidelity & Guaranty Co.* v. *State*, 254 Miss. 812, 182 So. 2d 919 (1966); *Stumpf* v. *Pederson*, 180 Okla. 408, 70 P.2d 101 (1937); *Butler* v. *United Pacific Ins. Co.*, 265 Or. 473, 509 P.2d 1184 (1973) (en banc); *Dawson* v. *Reliance Ins. Co.*, 482 S.W.2d 882 (Tex. Civ. App. 1972).

ages. The appellants in those cases did not contest whether the statutes permitted punitive damages, but whether the particular actions at issue rendered them liable at all under the applicable statute in the first place. Here, in contrast to *Levick* and *Gionfriddo*, the parties do not dispute the defendant's liability in and of itself, but rather the extent of the defendant's liability. Accordingly, the principles to be derived from *Levick* and *Gionfriddo* simply do not apply here.[8]

The plaintiff further argues that the term "loss" as set forth in § 14-52 necessarily includes punitive damages and attorney's fees because had the dealer remained in business, those sums would have been included in the amount of her recovery. The plaintiff contends that because she was entitled to recover punitive damages, attorney's fees and costs as a result of the judgment against the dealer under CUTPA, her award should not be diminished because the dealer went out of business. Moreover, in conjunction with those arguments, the plaintiff claims that to preclude recovery for attorney's fees, in particular, thwarts the public policy to protect consumers as set forth in CUTPA and § 14-52.

Although we recognize to a certain extent the logic contained in the plaintiff's arguments, as a reviewing court we cannot undermine the function of the legislature to add provisions to statutes that the legislature simply did not intend. "[I]t is the prerogative of the legislature, not the courts, to determine the [special] circumstances under which an award of attorneys' fees to the prevailing party will be authorized." *Doe* v. *State*, 216 Conn. 85, 111, 579 A.2d 37 (1990).

---

[8] The plaintiff in her brief further contends that case law "dictates that a surety's liability is coextensive with that of its principal." In raising that argument, the plaintiff again relies on cases that are dissimilar to and do not apply to the present situation. Thus, we find that general statement to be inaccurate, particularly when viewed in the present context.

We therefore conclude that under § 14-52, the legislature did not intend to permit recovery for punitive damages and attorney's fees under the surety bond. Accordingly, we affirm the judgment and award of the court.

The judgment is affirmed.

In this opinion MIHALAKOS, J., concurred.

SCHALLER, J., dissenting. I respectfully disagree with the majority's analysis of General Statutes § 14-52 and its conclusion that this section precludes the recovery of punitive damages and attorney's fees. I conclude, contrary to the majority, that the term "any loss" in § 14-52 is clear and unambiguous. Given its plain meaning, I believe "any loss" encompasses punitive damages and attorney's fees. I would therefore reverse the judgment of the trial court.

The majority concludes that the term "any loss" is "both generalized and ambiguous," and that the generality and ambiguity surrounding the term is demonstrated by consulting a standard dictionary definition. Indeed, the dictionary definition that the majority uses as support for the term's lack of clarity supports my position. The majority defines "any" as, "one, indifferently out of more than two . . . one, some, or all indiscriminately of whatever quantity." That definition of "any," together with the use of the word in the statute, is clear and comprehensive. As the majority recognizes, when the words of a statute are plain and unambiguous, there is no need to examine legislative history or other sources of guidance. Not only is logic on the side of the plaintiff in this case, as the majority concedes, but the word "any" is plain on its face and, as such, requires no interpretation beyond that which comes from its normal usage.

The only conceivable ambiguity might concern whether punitive damages constitute a "loss." That concern, however, is resolved under our case law. Punitive damages are awarded in this state "not to punish the defendant for his offense, but to compensate the plaintiff for his injuries." *DeSantis* v. *Piccadilly Land Corp.*, 3 Conn. App. 310, 315, 487 A.2d 1110 (1985). Moreover, our Supreme Court has recognized the principle that "a finding of actual loss may support an award of punitive damages"; *Hi-Ho Tower, Inc.* v. *Com-Tronics, Inc.*, 255 Conn. 20, 34, 761 A.2d 1268 (2000); and that punitive damages may be awarded upon a jury finding of liability, which is the equivalent of a finding of damages. Id. Punitive damages, therefore, represent a special kind of compensation for injury, damage or loss. In this case, the punitive damages awarded to the plaintiff in an unallocated damages award signify the existence of a loss, bringing it within the statutory term "any loss."

In view of the clarity of the phrase "any loss," it is not necessary or appropriate to consult legislative history. The term "any loss" should be accorded its plain meaning without more.

In any event, I do not agree with the majority's analysis of legislative history in this case. Although the majority notes the proposition that an award of punitive damages fulfills the salutary purpose of fully compensating a victim for the harm inflicted, it concludes that the surety provision in question was not enacted to provide consumers with full compensation. The majority supports that conclusion by relying on the use of the word "some" and the term "money owed" in the legislative history.

I do not agree with the proffered analysis. The use of the word "some" does not imply that the legislature intended that a plaintiff should be limited to partial damages but, instead, indicates that only one of many

potential means of recovery was being provided. The term "some" was specified, not by the legislature in the statute itself, but by legislators in the course of discussing the legislation. In addition, the majority's conclusion that the phrase "money owed to them" means amounts presently due, as opposed to subsequent money owed, is not supported by analysis. I see no basis for reading the legislative history so restrictively. Even if legislative history were properly considered in this case, it does not support the majority's conclusion. In addition, with regard to the analysis of attorney's fees, even though the legislature chose to specify certain examples of recovery in some instances, that practice does not detract from the comprehensive clarity of the words "any loss" in this instance.

Moreover, I do not agree with the majority's reliance on the Restatement, Security (1941). Sections 195 and 198 deal with injunction bonds and attachment bonds, respectively, and are not applicable in this case. Similarly, § 73 is inapplicable here because that section applies to penalties. In the present case, however, the judgment awarded the plaintiff compensation for a loss in the form of damages. The award was not a penalty that was assessed against the dealer in addition to compensating the plaintiff for her loss.

Because the award in this case is consistent with the public policy behind § 14-52, that is, that the surety should pay what the principal was obligated to pay, the plaintiff should not be deprived of her compensation by the defendant's suggestion of ambiguity in a term that could hardly be more straightforward. Because under the clear and broad language of § 14-52, the plaintiff should be allowed to recover from the surety the damages awarded for all her losses, I would reverse the judgment of the trial court.