### ROXANN AMES *v.* COMMISSIONER OF MOTOR VEHICLES
### (SC 16831)

Sullivan, C. J., and Borden, Katz, Palmer and Vertefeuille, Js.

Argued September 23, 2003—officially released February 3, 2004

*Joanne S. Faulkner*, for the appellant (plaintiff).

*Gary M. Case*, for the appellee (intervening defendant).

### Opinion

PALMER, J. Under General Statutes § 14-52,[1] an automobile dealer is required to furnish a surety bond in

---

[1] General Statutes § 14-52 provides in relevant part: "(a) No person, firm or corporation may engage in the business of the buying, selling, offering for sale or brokerage of any motor vehicle or the repairing of any motor vehicle without having been issued either a new car dealer's, a used car dealer's, a repairer's or a limited repairer's license. . . .

"(b) . . . (2) . . . [E]ach applicant for a new car dealer's or a used car dealer's license shall furnish a surety bond in the amount of twenty thousand dollars. . . .

"(4) Each such bond . . . shall be conditioned upon the applicant or licensee complying with the provisions of any state or federal law or regulation relating to the conduct of such business and provided as indemnity for any loss sustained by any person by reason of any acts of the licensee

the amount of $20,000 as indemnity for any loss sustained by any person as a result of any acts of the dealer constituting grounds for the suspension or revocation of the dealer's license to sell or repair automobiles or as a result of such dealer's going out of business. The sole issue raised by this certified appeal is whether the Appellate Court properly concluded that a surety bond furnished in accordance with § 14-52 does not provide indemnity for that portion of a civil judgment against the dealer incorporating an award of attorney's fees or an award of punitive damages. We agree with the Appellate Court that attorney's fees and punitive damages fall outside of the indemnification provisions of § 14-52 and, therefore, affirm the judgment of the Appellate Court.

The following relevant facts and procedural history are set forth in the opinion of the Appellate Court. "The underlying event in this case involved the plaintiff [Roxann Ames] and A.P.L. Auto Consulting, Inc., also known as Discount Auto Sales, a used automobile dealer (dealer). In 1995, the plaintiff purchased a motor vehicle from the dealer. Over protest by the plaintiff, in 1997, the dealer repossessed the vehicle. As a result of the repossession, the plaintiff filed an action [in 1997] against the dealer, alleging, [inter alia], breach of contract and unfair trade practices in violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq. The plaintiff demanded statutory, actual, punitive and treble damages. [In 1998] [t]he

constituting grounds for suspension or revocation of the license or such licensee going out of business. Such bond shall be executed in the name of the state of Connecticut for the benefit of any aggrieved party, but the penalty of the bond shall not be invoked except upon order of the commissioner [of motor vehicles] after a hearing held before said commissioner in accordance with the provisions of chapter 54. . . ."

Although § 14-52 was amended in 2002; see Public Acts 2002, 02-70, § 22; those amendments are not relevant to the merits of this appeal. For ease of reference, we refer to the current revision of § 14-52 throughout this opinion.

court rendered a default judgment in favor of the plaintiff after the dealer failed to appear and awarded damages in the amount of $20,286.40 plus costs of $280.60. The award included [treble damages pursuant to General Statutes § 52-564[2] and $1000 in attorney's fees under CUTPA].[3]

"Subsequently, the dealer went out of business and failed to pay the judgment. Pursuant to § 14-52, however, the dealer had obtained a surety bond for $20,000, which was issued by Western Surety [Company (Western Surety)].[4] After the expiration of the 180 day waiting period of General Statutes § 52-400e,[5] [the defendant, the commissioner of motor vehicles (commissioner)] invoked the surety bond on the plaintiff's behalf. The commissioner noted the court's prior award of damages, but found that the plaintiff [had] suffered actual damages of $5650, an amount consisting of her down payment, financing payment[s] and costs. The commissioner then concluded that the balance of the court's award of attorney's fees and punitive damages was not 'recoverable under the subject bond,' as set forth in

[2] General Statutes § 52-564 provides: "Any person who steals any property of another, or knowingly receives and conceals stolen property, shall pay the owner treble his damages."

[3] General Statutes § 42-110g (d) provides in relevant part that a party prevailing on a CUTPA claim may be awarded "costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery. . . ."

[4] Western Surety was granted permission to intervene as a party defendant in the present action.

[5] General Statutes § 52-400e provides: "Whenever a judgment in a civil action which relates to activities for which a license is required has been rendered against a business which is licensed by a state or local licensing authority and which remains unpaid for one hundred eighty days after receipt by the judgment debtor of notice of its entry and the judgment has not been stayed or appealed, the state or local licensing authority shall consider such failure to pay, if deliberate or part of a pattern of similar conduct indicating recklessness, as a basis for the revocation, suspension or conditioning of, or refusal to grant or renew such license. Nothing herein shall be construed to preempt an authority's existing policy if it is more restrictive."

§ 14-52, and thus ordered Western Surety to pay $5650 to the state of Connecticut for the benefit of the plaintiff.

"The plaintiff filed a petition for reconsideration, which the commissioner denied. The plaintiff then appealed to the Superior Court pursuant to General Statutes § 4-183.[6] In affirming the decision of the commissioner, the [trial] court concluded that § 14-52 . . . precludes an award of punitive damages and attorney's fees." *Ames* v. *Commissioner of Motor Vehicles*, 70 Conn. App. 790, 792–93, 802 A.2d 126 (2002).

The plaintiff appealed to the Appellate Court, which affirmed the judgment of the trial court. Id., 804. Specifically, the Appellate Court concluded that the term "any loss," as used in § 14-52 (b) (4), is "both generalized and ambiguous, and susceptible on its face to several different interpretations." Id., 798. The Appellate Court examined the legislative history and circumstances surrounding the enactment of the surety bond clause of § 14-52 (b), as well as its relationship to similar legislation, and concluded that the legislature did not intend for the term "any loss" to encompass attorney's fees and punitive damages. Id. In particular, the Appellate Court noted that the pertinent legislative history indicates an intent by the legislature to provide *some*, rather than complete, recourse for victims of fraudulent practices by motor vehicle dealers. Id., 798–99. The Appellate Court concluded that such recourse is limited to money that actually is *owed* to the consumer, and does not include any associated expenses or penalties. Id., 799–800. With regard to the plaintiff's claim for attorney's fees, the Appellate Court observed that, because Connecticut adheres to the "American rule," which precludes the recovery of attorney's fees in the absence

---

[6] General Statutes § 4-183 provides in relevant part: "(a) A person who has exhausted all administrative remedies available within the agency and who is aggrieved by a final decision may appeal to the Superior Court as provided in this section. . . ."

of express statutory or contractual language providing for such fees; e.g., *Rizzo Pool Co.* v. *Del Grosso*, 240 Conn. 58, 72–73, 689 A.2d 1097 (1997); the absence of such language in § 14-52 was a factor that weighed heavily against the plaintiff's interpretation of that statutory provision. *Ames* v. *Commissioner of Motor Vehicles*, supra, 70 Conn. App. 800. Finally, the Appellate Court relied on the fact that a similar statute, namely, General Statutes § 14-176,[7] which provides that a person seeking to obtain a certificate of title to a motor vehicle may be required to furnish a surety bond when title is in question, expressly authorizes the recovery of attorney's fees against the bond, thereby indicating that if the legislature also had intended for § 14-52 to encompass attorney's fees, the legislature would have said so explicitly as it did in § 14-176. Id., 800–801.

---

[7] General Statutes § 14-176 provides: "If the commissioner is not satisfied as to the ownership of the vehicle or that there are no undisclosed security interests in it, the commissioner may register the vehicle but shall either: (1) Withhold issuance of a certificate of title until the applicant presents documents reasonably sufficient to satisfy the commissioner as to the applicant's ownership of the vehicle and that there are no undisclosed security interests in it; or (2) as a condition of issuing a certificate of title, require the applicant to file with the commissioner a bond in the form prescribed by the commissioner and executed by the applicant, and either accompanied by the deposit of cash with the commissioner or also executed by a person authorized to conduct a surety business in this state. The bond shall be in an amount equal to twice the value of the vehicle as determined by the commissioner and conditioned to indemnify any prior owner and lienholder and any subsequent purchaser of the vehicle or person acquiring any security interest in it, and their respective successors in interest, against any expense, loss or damage, including reasonable attorney's fees, by reason of the issuance of the certificate of title of the vehicle or on account of any defect in or undisclosed security interest upon the right, title and interest of the applicant in and to the vehicle. Any such interested person has a right of action to recover on the bond for any breach of its conditions, but the aggregate liability of the surety to all persons shall not exceed the amount of the bond. The bond, and any deposit accompanying it, shall be returned at the end of five years or prior thereto if the vehicle is no longer registered in this state and the currently valid certificate of title is surrendered to the commissioner, unless the commissioner has been notified of the pendency of an action to recover on the bond."

We granted the plaintiff's petition for certification to appeal, limited to the following question: "Did the Appellate Court properly conclude that, pursuant to General Statutes § 14-52, the plaintiff was not entitled to recover punitive damages and attorney's fees against the surety bond issued by . . . Western Surety . . . ?" *Ames* v. *Commissioner of Motor Vehicles*, 261 Conn. 923, 806 A.2d 1058 (2002). We answer the certified question in the affirmative.

We begin our review of the plaintiff's claim by noting that "the general purpose of a suretyship contract is to guard against loss in the event of the principal debtor's default. . . . [T]he obligation of a surety is an additional assurance to the one entitled to the performance of an act that the act will be performed. . . . [T]he liability of sureties is to be determined by the specified conditions of the bond . . . . [W]hen a bond is required by statute, a court will read the statute into the contract between the principal, surety and obligee." (Citations omitted; internal quotation marks omitted.) *Southington* v. *Commercial Union Ins. Co.*, 254 Conn. 348, 358–59, 757 A.2d 549 (2000).

Because this issue raises a question of statutory construction, our review is plenary. E.g., *Thames Talent, Ltd.* v. *Commission on Human Rights & Opportunities*, 265 Conn. 127, 135, 827 A.2d 659 (2003). As with all such questions, we look first to the language of the statute. Id. General Statutes § 14-52 (b) provides in relevant part that each applicant for a used car dealer's license shall furnish a surety bond in the amount of $20,000 "as indemnity for any loss sustained by any person by reason of . . . such licensee going out of business. . . ." The bond is to be executed in the name of the state for the benefit of any aggrieved party, and the commissioner shall determine, after a hearing, the amount to which that aggrieved party is entitled under the bond. See General Statutes § 14-52 (b) (4). The plain-

tiff asserts that she is entitled to recover not only actual damages but also punitive damages and attorney's fees under the bond. In support of her contention, she claims that the term "any loss" contained in § 14-52 (b) (4) "is an all encompassing term which contains no hint of an exception." We are not persuaded.

We agree with the Appellate Court that the term "any loss," as used in § 14-52 (b) (4), is facially susceptible to more than one interpretation. See *Ames* v. *Commissioner of Motor Vehicles*, supra, 70 Conn. App. 798. "In interpreting statutes that contain the word 'any,' we have recognized that 'any' can have a variety of meanings. . . . The word 'any' can be used to denote 'all,' 'every,' 'some' or 'one.' " (Citations omitted.) *Industrial Risk Insurers* v. *Hartford Steam Boiler Inspection & Ins. Co.*, 258 Conn. 101, 117, 779 A.2d 737 (2001). "Its meaning in a given statute depends upon the context and subject matter of the statute." *Stamford Ridgeway Associates* v. *Board of Representatives*, 214 Conn. 407, 428, 572 A.2d 951 (1990). Similarly, " '[l]oss' has been held synonymous with deprivation, detriment and injury. . . . It is a generic and relative term." (Citation omitted.) *Hinchliffe* v. *American Motors Corp.*, 184 Conn. 607, 613, 440 A.2d 810 (1981). We therefore must look to the particular statutory context in which the term "any loss" is used.

"A fundamental tenet of statutory construction is that statutes are to be considered to give effect to the apparent intention of the lawmaking body." (Internal quotation marks omitted.) *Winchester Woods Associates* v. *Planning & Zoning Commission*, 219 Conn. 303, 309, 592 A.2d 953 (1991). "The meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extra-

textual evidence of the meaning of the statute shall not be considered." Public Acts 2003, No. 03-154, § 1. Inasmuch as § 14-52 is not "plain and unambiguous," we look to other factors relevant to our inquiry into its meaning, including the legislative history of the statute, the circumstances surrounding its enactment and its purpose. E.g., *Winchester Woods Associates* v. *Planning & Zoning Commission*, supra, 310. We are mindful, moreover, that, "[i]n determining whether . . . a statute abrogates or modifies a common law rule the construction must be strict, and the operation of a statute in derogation of the common law is to be limited to matters clearly brought within its scope." (Internal quotation marks omitted.) *Rumbin* v. *Utica Mutual Ins. Co.*, 254 Conn. 259, 265, 757 A.2d 526 (2000). Thus, "[n]o statute is to be construed as altering the common law, farther than its words import [and . . . a statute] is not to be construed as making any innovation upon the common law which it does not fairly express." (Internal quotation marks omitted.) *State* v. *Luzietti*, 230 Conn. 427, 433, 646 A.2d 85 (1994). "We recognize only those alterations of the common law that are clearly expressed in the language of the statute because the traditional principles of justice upon which the common law is founded should be perpetuated." (Internal quotation marks omitted.) *Rumbin* v. *Utica Mutual Ins. Co.*, supra, 265–66.

"The common law rule in Connecticut, also known as the American Rule, is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, 231 Conn. 77, 93–94, 646 A.2d 1308 (1994). "Because we must respect the legislative prerogative of choosing the special circumstances under which [attorney's fees] awards may be made . . . we require a clear expression of the legislature's intent to

create a statutory exception [to the rule]." (Citation omitted; internal quotation marks omitted.) Id., 94. Examples of such clearly articulated statutory exceptions to our common-law rule include General Statutes § 14-106b (d) (in action to recover damages for odometer tampering, defendant shall be liable for, inter alia, "reasonable attorney's fees"), General Statutes § 14-145c (allowing "reasonable attorney's fees" in action to recover damages for improper towing or removal of automobile by owner or lessee of private property), General Statutes § 52-240a (if court determines that claim or defense in product liability action is frivolous, it "may award reasonable attorney's fees" to prevailing party), General Statutes § 52-251b (a) (in action brought pursuant to General Statutes § 46a-58 to recover damages for deprivation of civil rights, court may award prevailing party, inter alia, "reasonable attorney's fee"), and General Statutes § 52-251d (a) (in civil actions to establish paternity or in certain actions to establish, modify or enforce child support orders, "the court may allow the state, when it is the prevailing party, a reasonable attorney's fee"). Thus, it is apparent that "when the General Assembly want[s] to authorize the award of attorney's fees it kn[ows] how to do it." (Internal quotation marks omitted.) *Fleming* v. *Garnett*, supra, 94. Section 14-52, however, is devoid of any express language authorizing an award of attorney's fees. In the absence of such language, we will not presume that the legislature intended for § 14-52 to operate in derogation of our long-standing common-law rule disfavoring the award of attorney's fees to the prevailing party.

The plaintiff asserts that § 14-176[8] provides support for her contention that attorney's fees fall within the purview of § 14-52. On the contrary, we agree with the Appellate Court that § 14-176 militates *against* the construction of § 14-52 advanced by the plaintiff. Under

---

[8] See footnote 7 of this opinion.

§ 14-176, a person applying for a certificate of title to a motor vehicle may be required to post bond as a condition of receipt of the certificate. General Statutes § 14-176 provides in relevant part: "The bond shall be in an amount equal to twice the value of the vehicle as determined by the commissioner and conditioned to indemnify any prior owner and lienholder and any subsequent purchaser of the vehicle . . . against any expense, loss or damage, *including reasonable attorney's fees*, by reason of the issuance of the certificate of title . . . ." (Emphasis added.) The plaintiff contends that because the legislature has deemed attorney's fees to be included within the phrase "*any* expense, *loss* or damage" contained in General Statutes § 14-176, the legislature also intended that attorney's fees shall constitute a component of the term "any loss" contained in § 14-52. (Emphasis added.) We disagree.

First, the plaintiff's contention is contrary to the principle that, "[w]here a statute, with reference to one subject contains a given provision, the omission of such provision from a similar statute concerning a related subject . . . is significant to show that a different intention existed. . . . That tenet of statutory construction is well grounded because [t]he General Assembly is always presumed to know all the existing statutes and the effect that its action or non-action will have upon any one of them." (Internal quotation marks omitted.) *M. DeMatteo Construction Co.* v. *New London*, 236 Conn. 710, 717, 674 A.2d 845 (1996). Moreover, as we have explained, the construction of § 14-52 urged by the plaintiff contravenes the principle that, when an entitlement to attorney's fees is claimed, we require a clear expression of the legislature's intent to create an exception to our long-standing common-law rule barring the recovery of such fees. E.g., *Fleming* v. *Garnett*, supra, 231 Conn. 93–94. Finally, it is reasonable to presume that the legislature considered attorney's

fees to be an "expense" within the meaning of § 14-176, rather than a component of any "loss" or "damage," because attorney's fees are a cost, or expense, frequently associated with litigation. See, e.g., *Berry* v. *Loiseau*, 223 Conn. 786, 832, 614 A.2d 414 (1992) (noting that "[l]itigation expenses may include . . . [inter alia] attorney's fees").

The plaintiff also contends that the Appellate Court's interpretation of § 14-52 is inconsistent with our holding in *Chrysler Corp.* v. *Maiocco*, 209 Conn. 579, 596, 552 A.2d 1207 (1989), in which we concluded that arbitrators have authority to award attorney's fees under the provisions of Connecticut's Lemon Law. See generally General Statutes §§ 42-179 through 42-190. The plaintiff's reliance on *Maiocco* is misplaced. In *Maiocco*, the issue was not whether attorney's fees are permitted under the Lemon Law; they clearly are, and we cited to "the four separate statutory areas involved in the overall Lemon Law apparatus that [expressly] authorize payment of attorney's fees." *Chrysler Corp.* v. *Maiocco*, supra, 586. The sole issue we addressed, rather, was whether a Lemon Law arbitrator is authorized to award such fees in the absence of explicit provisions in the Lemon Law providing such authorization. See id., 580. After reviewing the relevant statutory language, history and purpose, we concluded that the legislature intended to authorize Lemon Law arbitrators to award attorney's fees. Id., 596. *Maiocco* is therefore inapposite inasmuch as it involved the question of *who* is authorized to award attorney's fees under the Lemon Law rather than *whether* such an award is authorized thereunder.[9]

---

[9] The plaintiff also relies on several cases of this court and the Appellate Court involving uninsured and underinsured motorist coverage to support her contention that attorney's fees and punitive damages are recoverable under § 14-52. The cases cited by the plaintiff are unavailing, however, because they involve statutory provisions that bear no material similarity to § 14-52.

We also reject the plaintiff's claim that she is entitled to recover punitive damages against a surety bond furnished in accordance with § 14-52. In particular, the plaintiff seeks indemnification under § 14-52 for the treble damages that she was awarded pursuant to § 52-564. An award of multiple damages, however, is an extraordinary remedy that is available only when the legislature expressly provides for such damages by statute. E.g., *DeMilo* v. *West Haven*, 189 Conn. 671, 675–76, 458 A.2d 362 (1983); *Alaimo* v. *Royer*, 188 Conn. 36, 43, 448 A.2d 207 (1982). Accordingly, as with attorney's fees, we require explicit statutory language to support an award of punitive damages. Put simply, just as the legislature knows how to authorize an award of attorney's fees when it wishes to do so; see *Fleming* v. *Garnett*, supra, 231 Conn. 94; it also knows how to authorize an award of punitive damages. E.g., General Statutes § 4d-39 (c) (in action by attorney general to prosecute violation under General Statutes §§ 4d-36, 4d-37 or 4d-38, court may "award [inter alia] punitive damages"); General Statutes § 16-8d (b) (in action by employee alleging retaliation for disclosure of substantial misfeasance, malfeasance or nonfeasance in management of, inter alia, public service company, court "may award punitive damages"); General Statutes § 19a-550 (e) ("punitive damages may be assessed" in civil action in which there is finding of wilful or reckless deprivation of rights under patients' bill of rights implemented in accordance with § 19a-550); General Statutes § 31-290a (b) (in action alleging retaliation against employee for filing workers' compensation claim, "court may . . . award punitive damages"). Because § 14-52 makes no mention of punitive damages, the plaintiff cannot prevail on her claim that she may recover such damages under § 14-52.

Finally, as the Appellate Court explained; see *Ames* v. *Commissioner of Motor Vehicles*, supra, 70 Conn.

App. 798–99; the legislative history of § 14-52 supports the conclusion that the legislature did not intend to authorize the recovery of either attorney's fees or punitive damages against a surety bond furnished pursuant to § 14-52. In 1984, the legislature amended § 14-52 to "require applicants for motor vehicle dealer or repair licenses to post surety bonds executed in the name of the state in order to provide security for those consumers who are provided services by those individuals." 27 H.R. Proc., Pt. 8, 1984 Sess., p. 2708, remarks of Representative Christine M. Niedermeier; see Public Acts 1984, No. 84-508. In explaining the purpose and need for the amendment, Representative Niedermeier explained: "[V]ery often motor vehicle repairers and others go out of business and they at that point owe money to various consumers, and there is no avenue for recovery. These bonds would provide *some* financial security to enable consumers to obtain *reimbursement* for *money owed* to them." (Emphasis added.) 27 H.R. Proc., supra, p. 2709. It is unlikely that a surety bond that was intended to provide "*some* financial security" to consumers in the form of "*reimbursement* for *money owed* to them"; (emphasis added) id.; also was intended to indemnify consumers for attorney's fees and punitive damages. Indeed, the fact that the bond amount was set at $5000 in 1984 and only raised to $20,000 in 1993 to adjust for inflation; see 36 S. Proc., Pt. 9, 1993 Sess., p. 3219, remarks of Senator Winthrop S. Smith, Jr.; underscores this point; had the legislature intended for the dealer's bond to indemnify consumers beyond their actual or compensatory damages, the legislature likely would have mandated a significantly larger bond, as it has done in other statutory contexts. See, e.g., General Statutes § 8-25 (a) (authorizing planning commission to accept surety bond in amount sufficient to secure "to the municipality the actual construction, maintenance and installation of . . . improvements and utilities"

approved by commission in accordance with plan to subdivide land); General Statutes § 49-41 (a) (certain state or municipal construction contracts shall include provision requiring person or entity performing contract to furnish surety bond for full amount of contract price "for the protection of persons supplying labor or materials in the prosecution of work provided for in the contract for the use of each such person").

The plaintiff finally argues that public policy considerations militate in favor of her proposed construction of § 14-52. The plaintiff's primary contention in this regard is that the statutory suretyship created under § 14-52 is intended to protect consumers and, therefore, should be construed broadly to accomplish its purpose. We agree with the plaintiff regarding the beneficent purpose of § 14-52. For the reasons that we already have articulated, however, we are not persuaded that it is susceptible to the interpretation urged by the plaintiff.[10] The determination of whether reasons of public policy exist to expand the reach of § 14-52 to encompass attorney's fees and punitive damages is for the legislature, not this court, to make.[11]

---

[10] We note that, at least with respect to her claim for attorney's fees, the plaintiff relies largely on *State ex rel. Webb* v. *Hartford Casualty Ins. Co.*, 956 S.W.2d 272 (Mo. App. 1997) (*Webb*). Unlike § 14-52, however, the Missouri automobile dealer bond statute at issue in *Webb* required an injured party to obtain a final judgment against the dealer from a court of competent jurisdiction before the bond could be invoked. Id., 275; see Mo. Rev. Stat. § 301.560.1 (4) (Cum. Sup. 1993). In holding that attorney's fees were recoverable under the Missouri statute, the Missouri Court of Appeals reasoned: "The statute which requires the bond, and specifies what the bond must cover, contemplates that the injured party will necessarily incur attorney fees in obtaining the required judgment against the dealer. . . . Consequently, it is clear that the parties intended that attorney fees be a 'loss' subject to the bond's indemnity." *State ex rel. Webb* v. *Hartford Casualty Ins. Co.*, supra, 275. Inasmuch as § 14-52 permits an aggrieved party to raise a claim directly with the commissioner, the plaintiff derives no support from the rationale underlying the court's conclusion in *Webb*.

[11] Our interpretation of § 14-52 also is supported by the Restatement (Third) of Suretyship and Guaranty, § 73, pp. 290–91 (1996) ("[w]hen the secondary obligation is a legally mandated bond, that obligation does not

The judgment of the Appellate Court is affirmed.

In this opinion the other justices concurred.

include any penalties imposed on the principal obligor for failure to fulfill the underlying obligation unless the secondary obligation so provides"), and by what appears to be the weight of authority on the issue. E.g., *Ferris* v. *Haymore*, 967 F.2d 946, 953 (4th Cir. 1992) (interpreting North Carolina law with respect to recovery of punitive damages); *Harper* v. *Home Ins. Co.*, 23 Ariz. App. 348, 350, 533 P.2d 559 (1975) (punitive damages); *Carter* v. *Agricultural Ins. Co.*, 266 Cal. App. 2d 805, 807, 72 Cal. Rptr. 462 (1968) (punitive damages); *Hubbel* v. *Aetna Casualty & Surety Co.*, 758 So. 2d 94, 97 (Fla. 2000) (attorney's fees); *Koch* v. *Merchants Mutual Bonding Co.*, 211 Kan. 397, 403, 507 P.2d 189 (1973) (punitive damages); *United States Fidelity & Guaranty Co.* v. *State ex rel. Stringfellow*, 254 Miss. 812, 818, 182 So. 2d 919 (1966) (punitive damages); *Stumpf* v. *Pederson*, 180 Okla. 408, 409–10, 70 P.2d 101 (1937) (punitive damages); *Butler* v. *United Pacific Ins. Co.*, 265 Or. 473, 478, 509 P.2d 1184 (1973) (punitive damages); *Dawson* v. *Reliance Ins. Co.*, 482 S.W.2d 882, 882 (Tex. Civ. App. 1972) (punitive damages).

