******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ZARELLA, J., with whom ESPINOSA, J., joins, concurring. I agree with the majority's answers to the two certified questions from the United States District Court for the District of Connecticut, but, in light of my conclusion in my concurring opinion in *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, 321 Conn. 172, 211, 136 A.3d 1232 (2016) (*Zarella, J.*, concurring), I rely on a much different analysis in answering the first question than does the majority.

I

The first certified question asks whether "[§] 402A of the Restatement (Second) of Torts (and [c]omment [i] to that provision) apply to a product liability claim for [negligent design] under [Connecticut's Product Liability Act (act), General Statutes § 52-572m et seq.]?" *Bifolck* v. *Philip Morris, Inc.*, United States District Court, Docket No. 3:06CV1768 (SRU) (D. Conn. February 14, 2014). The plaintiff in the present case, Vincent Bifolck, individually and as executor of the estate of Jeanette D. Bifolck, brought a product liability action against the defendant, Philip Morris, Inc., in federal court, alleging that the defendant's cigarettes were defectively designed and that this design defect caused the plaintiff's harm. The plaintiff seeks to prove his case using a negligence theory of liability. The District Court has asked us to clarify the proper standard for determining defectiveness that should apply to the plaintiff's claim. The parties agree that, to succeed on his claim, the plaintiff must prove that the defendant's cigarette design was "unreasonably dangerous," but they disagree about the standard for determining whether a product is unreasonably dangerous in a negligence action. The defendant argues that the "ordinary consumer expectations test" in comment (i) to § 402A of the Restatement (Second), and its "good tobacco" exception, should be used to determine whether a product is unreasonably dangerous in the context of a negligence based claim and that this test precludes a finding of liability in the present case. The plaintiff disagrees that § 402A of the Restatement (Second), which is a strict liability test, should apply to his negligence claim.

Like the majority, I also conclude that § 402A of the Restatement (Second) does not apply to the plaintiff's claim, but I disagree with the majority's basis for this conclusion in light of my concurring opinion in *Izzarelli*. In that opinion, I explained that I would adopt the approach used for design defect cases in §§ 1, 2 and 4 of the Restatement (Third) of Torts, Products Liability. *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, supra, 321 Conn. 241–42 (*Zarella, J.*, concurring). The Restatement (Third) eliminates reliance on § 402A's consumer expectations standards and, instead, adopts a risk-util-

ity test as the proper liability standard for all design defect claims. Restatement (Third), Torts, Products Liability § 2, comment (n), pp. 35–36 (1998).

As I explained in *Izzarelli*, the Restatement (Third) does not recognize a distinction between claims based on negligence or strict liability; see id., p. 36; a position that is consistent with the purposes of the act, which was intended to help simplify product liability causes of action. See *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, supra, 321 Conn. 239–41 (*Zarella, J.*, concurring). The Restatement (Third) instead defines its design defect test "functionally," based on the unique considerations involved in design defect claims. (Internal quotation marks omitted.) Id., 231 (*Zarella, J.*, concurring), quoting Restatement (Third), supra, § 2, comment (n), p. 35. Unlike the approach of the Restatement (Second), the Restatement (Third) acknowledges that design defect claims present different considerations than other types of product defect claims, like those involving manufacturing defects and, therefore, require a different test. See Restatement (Third), supra, § 2, comment (a), p. 15; id., comment (n), p. 35. To address the fundamental and unique question presented in design defect cases—whether the manufacturer's design was reasonably safe—the Restatement (Third) adopts a risk-utility test, which is essentially a negligence style reasonableness balancing test that allows a jury to consider the reasonableness of the manufacturer's design choice in light of available alternatives. Id., comment (d), pp. 19–20; id., comment (f), pp. 23–24; id., comment (n), pp. 35–36; see also *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, supra, 222–23, 231–37 (*Zarella, J.*, concurring). The Restatement (Third) recognizes that the risk-utility analysis is functionally equivalent to the analysis applicable to a negligence claim—each asks whether the manufacturer's design choice was reasonable in light of available alternatives or the risks presented by the product design. Consequently, it is unnecessary, under the Restatement (Third), to send both theories of liability to a jury; rather, the Restatement (Third) adopts the broader risk-utility test as the appropriate standard for design defect claims.[1] See *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, supra, 235–36 (*Zarella, J.*, concurring) (noting that Restatement [Third] standard avoids traditional trappings associated with negligence theory of recovery by eliminating requirements that plaintiff prove duty of care or that manufacturer was careless in choosing product design).

In answering the first certified question, the majority fosters unnecessary confusion with respect to the continued viability of a negligence theory of recovery for claims alleging a design defect at the time of sale. In addressing the certified question, the majority acknowledges authorities concluding that instructing a jury on both a risk-utility and a negligence theory of recovery might result in inconsistent verdicts, but the majority

declines to decide whether negligence should survive as an independent theory of recovery in this jurisdiction. See footnote 23 of the majority opinion. In my view, this leaves unnecessary uncertainty for this case and for future cases in which parties may intend to file design defect claims based on a negligence theory. Rather than leave this uncertainty in our law, I would make clear in answering the first certified question that, for the reasons stated in my concurring opinion in *Izzarelli*, the plaintiff's design defect claims are not governed by comment (i) to § 402A of the Restatement (Second) but by the risk-utility test set forth in the Restatement (Third). See *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, supra, 321 Conn. 231–39 (*Zarella, J.*, concurring).

Applying the Restatement (Third) in the present case, I conclude that § 402A of the Restatement (Second) and its ordinary consumer expectations test should no longer apply to claims involving design defects existing at the time of sale, and, thus, § 402A does not control the plaintiff's claim in the present case. Because the Restatement (Third) no longer recognizes a stand-alone negligence theory of recovery for design defect claims, I would further conclude that the plaintiff must proceed under the risk-utility test. See Restatement (Third), supra, § 2, comment (n), pp. 35–36; see also *Izzarelli* v. *R.J. Reynolds Tobacco Co.*, supra, 321 Conn. 231–37 (*Zarella, J.*, concurring). Consequently, I would answer the first certified question in the negative, as the majority does, but for markedly different reasons.

## II

With respect to the second certified question, regarding the measure of punitive damages under General Statutes § 52-240b, I agree with the majority's answer and generally agree with its analysis. I write separately to emphasize that I find the answer to this question to be an extremely close call. As the defendant argues, there is a strong presumption against construing a statute to override the common law. See, e.g., *Ames* v. *Commissioner of Motor Vehicles*, 267 Conn. 524, 532, 839 A.2d 1250 (2004); *Lynn* v. *Haybuster Mfg., Inc.*, 226 Conn. 282, 290, 627 A.2d 1288 (1993). This presumption is especially strong when the common-law principle at issue is our well established, 200 year old method for calculating punitive damage awards, which limits such awards to attorney's fees less taxable costs. When considering the effect of a statute on a common-law principle, we must attempt to harmonize our construction of the statute with the common law, to the extent reasonably possible, unless the statutory language shows a clear intention to displace the common law. See, e.g., *Ames* v. *Commissioner of Motor Vehicles*, supra, 532 (noting that our construction of statutes must avoid "any innovation [on] the common law [that a statute] does not fairly express" [internal quotation

marks omitted]).

In the present case, I am persuaded that the legislature intended to adopt an approach that is different from the common law with respect to punitive damages calculations, principally in light of its decision to include a separate provision in the act providing for an award of attorney's fees. See General Statutes § 52-240a. I share the majority's concerns that arise from construing §§ 52-240a and 52-240b as both allowing awards of attorney's fees but under different conditions. As the majority explains, under such a construction, if a prevailing plaintiff established both reckless disregard of the safety of product users, consumers, and others who are injured by a product, and that a defense raised was frivolous, limiting the plaintiff's award under both statutes to his attorney's fees effectively compensates the plaintiff for only one of the defendant's wrongful actions, which would appear to frustrate the purpose of these statutes. I therefore am persuaded that § 52-240b, considered together with other provisions of the act, fairly expresses an intention to depart from the common-law rule regarding the calculation of punitive damages.

### III

In conclusion, I agree with the majority that § 402A of the Restatement (Second) does not apply to the plaintiff's claim, and, therefore, I would answer the first certified question in the negative. I would also make clear, however, that the proper standard governing the plaintiff's claim is the risk-utility standard set forth in §§ 1 and 2 of the Restatement (Third). With respect to the second certified question, I concur in the majority's reasoning and answer.

[1] Despite our adoption of a risk-utility test, the majority has retained the use of the ordinary consumer expectations test but suggests that its application might be limited to cases involving product designs that violate safety laws and regulations or express warranties. See footnote 19 of the majority opinion. The Restatement (Third), however, does not rely on the consumer expectations test for these types of claims but, instead, recognizes separate theories of recovery for claims based on violations of safety laws and regulations; see Restatement (Third), supra, § 4, p. 120; and misrepresentations by the manufacturer. Id., § 9, p. 187; see also id., § 2, comment (r), p. 40. Retaining the consumer expectations test is, therefore, wholly unnecessary in my view, and only fosters further confusion.